JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-Defendant Dwight Freeman ("Appellant") appeals from his convictions for aggravated robbery, kidnapping and theft. For the reasons set forth below, we affirm.
 {¶ 2} On November 25, 2003, the Appellant was indicted on four counts: one count for aggravated robbery, in violation of R.C. 2911.01, with one and three-year gun specification; one count of kidnapping, in violation of R.C. 2905.01, with one-and three-year gun specifications; one count of theft, in violation of R.C. 2913.02, with an elderly specification; and one count of having a weapon under a disability, in violation of R.C. 2923.13. Appellant was arraigned and pled not guilty to all counts in the indictment. On November 11, 2003, Appellant was arraigned on a different case involving robbery, Case No. CR-444871.
 {¶ 3} On January 13, 2004, the trial court granted Appellant's request to remove his counsel and was assigned counsel for the second time. Additionally, Appellant filed a pro se motion to dismiss for want of speedy trial.
 {¶ 4} On February 9, 2004, the trial court denied Appellant's pro se motion to dismiss. That same day, Appellant filed a pro se motion to waive counsel.
 {¶ 5} On March 29, 2004, Appellant filed a motion to suppress the identification and a motion to voir dire the identification witness. Three days later, on March 31, 2004, Appellant's second attorney filed a motion to withdraw as counsel. On April 2, 2004, Appellant's third attorney filed a notice of appearance.
 {¶ 6} On May 10, 2004, Appellant was referred to the Court Psychiatric Clinic. Sixty (60) days later, on July 9, 2004, the parties stipulated to the Clinic's report and the trial court found Appellant competent to stand trial.
 {¶ 7} On July 15, 2004, the trial court held a hearing and denied Appellant's motion to suppress the identification. On that same day, the trial court denied Appellant's oral motion to dismiss for want of speedy trial. The state then nolled Count Four of the indictment, having a weapon under disability.
 {¶ 8} At the trial of this matter, Percy Anderson testified that on October 8, 2003, he was driving his pickup truck to a landscaping job down Dill Road in South Euclid, Ohio when the Appellant approached Mr. Anderson's vehicle asking for directions. Mr. Anderson supplied the Appellant with directions, but informed the Appellant, when asked, that he was on his way to a job and could not provide the Appellant with a ride. Mr. Anderson then traveled down the street to a client's home.
 {¶ 9} Mr. Anderson further testified that as he was about to drive away from the client's home on Dill Road, the Appellant jumped into the passenger seat, pointed a gun to Mr. Anderson's side, and directed him to drive. Mr. Anderson complied. For about one hour, Mr. Anderson drove the Appellant around the Cleveland area per Appellant's directions. The entire time, the Appellant and Mr. Anderson were less than two feet from each other. The Appellant finally ordered Mr. Anderson to stop the truck near Euclid and Superior Avenue. At that time, the Appellant threatened Mr. Anderson, confiscated his money, and ordered him to exit the vehicle. The Appellant then drove off in the pickup truck. Subsequently, Mr. Anderson found a church nearby and called the police.
 {¶ 10} Mr. Anderson provided the police with a description of the Appellant. Detective Ben Parisi and Officer Deidra Hollyfield testified that Mr. Anderson described the Appellant as an African-American male with a dark complexion, who was approximately six feet tall and weighed approximately 180 pounds. Additionally, Mr. Anderson informed the police that the Appellant was wearing light gray nylon pants and white sneakers.
 {¶ 11} Officer Lipscomb testified that approximately forty minutes after the crime, he spotted Mr. Anderson's vehicle and continued to follow the vehicle, with sirens off, until the vehicle pulled over. Appellant then exited the vehicle, asked the officer "what's wrong" and fled. The officer gave chase and the Appellant was apprehended.
 {¶ 12} Both Detective Parisi and Officer Hollyfield testified that Mr. Anderson was taken to the scene of the arrest. The stolen pickup truck was located on a street nearby and Appellant was taken from a squad car while handcuffed when Mr. Anderson unequivocally identified Appellant as the person who robbed him. At the time of the identification, Mr. Anderson was sitting in another squad car about twenty-five feet from the Appellant. When arrested, the Appellant was wearing a dark shirt, dark pants and white sneakers. After further investigation, the police learned that Appellant was wearing gray nylon pants underneath the dark pants.
 {¶ 13} On July 22, 2004, the jury returned a guilty verdict on all three remaining counts of the indictment. The jury also found Appellant guilty of the three-year gun specifications found in Counts One and Two, and the elderly specification in Count Three.
 {¶ 14} A sentencing hearing was held the next day. The trial court sentenced Appellant to eight years for Count One, concurrent to six years for Count Two, and two years for Count Three. The trial court also imposed a three-year term for the gun specification.
 {¶ 15} Appellant now appeals and submits six assignments of error for our review.
 {¶ 16} The first assignment of error states:
 {¶ 17} "The trial court erred in overruling Mr. Freeman's motion to suppress the results of the `cold stand' identification."
 {¶ 18} In this assignment of error, Appellant challenges the trial court's decision with regard to the admissibility of the "cold stand" identification. In State v. Curry (1994), 95 Ohio App.3d 93, 96,641 N.E.2d 1172, this court set forth the scope of our review regarding a motion to suppress and stated: "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay
(1973), 34 Ohio St.2d 250, 63 Ohio Op.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990),55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908."
 {¶ 19} Courts apply a two-prong test in determining the admissibility of challenged identification testimony. First, the defendant bears the burden of demonstrating that the identification procedure was unnecessarily suggestive. If this burden is met, the court must consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. State v. Page, Cuyahoga App. No. 84341, 2005-Ohio-1493. "Stated differently, the issues is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." State v. Willis (1997),120 Ohio App.3d 320, 324-25, 697 N.E.2d 1072, citing Manson v.Brathwaite (1977), 432 U.S. 98, 114, 53 L. Ed.2d 140, 97 S.Ct. 2243.
 {¶ 20} In a "cold stand," the victim, in a relatively short time after the incident, is shown only one person and is asked whether the victim can identify the perpetrator of the crime. State v. Scott (May 11, 2000), Cuyahoga App. No. 76171. This court has previously explained the conditions necessary for a proper "cold stand" identification. A cold stand or one-on-one show-up identification is permissible as long as the trial court considers the following factors: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of the time between the crime and the confrontation.State v. Thompson, Cuyahoga App. No. 79938, 2002-Ohio-2390, citing Neilv. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375.
 {¶ 21} In the instant matter, the trial court considered the above five factors and properly denied Appellant's motion to suppress the identification. Mr. Anderson, the victim and witness in this matter, had ample opportunity to view the Appellant prior to and during the crime. Mr. Anderson drove his pickup truck for over an hour during daytime hours before he was ordered out of the vehicle. During this time, the Appellant sat in the passenger seat, less than two feet from Mr. Anderson, pointed a gun to his side and supplied directions. The Appellant was not wearing a mask and did not disguise his appearance in any way. Accordingly, the trial court determined that Mr. Anderson, the victim in this case, had ample opportunity to view the crime.
 {¶ 22} Additionally, the trial court determined that Mr. Anderson's degree of attention was adequate. While Mr. Anderson was ordered to drive the entire time, which Mr. Anderson admitted was his main concern, Mr. Anderson testified that he would turn and look at the Appellant throughout the hour-long ordeal of the car-jacking.
 {¶ 23} Also, the trial court found that Mr. Anderson's prior description of the Appellant was sufficiently accurate. Mr. Anderson identified the perpetrator as a dark-skinned black male, approximately six feet tall, weighing 180 pounds, wearing gray nylon pants and white sneakers. While Mr. Anderson's description of the perpetrator's height and weight were slightly off, Appellant is actually five feet eight inches tall and weighs 160, the trial court noted that both Mr. Anderson and the perpetrator were sitting at the time of the crime, making an exact description of the perpetrator's height and weight difficult. Further, the trial court noted that at the time of the arrest, while the Appellant was wearing dark pants and white sneakers, further investigation revealed that the Appellant was wearing gray nylon pants underneath the black pants. In conclusion, the trial court found Mr. Anderson's prior description of the perpetrator sufficiently accurate.
 {¶ 24} Furthermore, the trial court determined that Mr. Anderson was one hundred percent positive in his identification of the Appellant. At the cold stand, Mr. Anderson stated that he immediately recognized and identified the Appellant as the person who robbed and kidnapped him. Additionally, Mr. Anderson identified the Appellant in open court as the perpetrator, stating "He's the man that car-jacked me."
 {¶ 25} Finally, the length of time between the crime and the confrontation was minimal. Only one hour and forty minutes elapsed from the time of the crime until Mr. Anderson positively identified the Appellant. The trial court noted that the identification was suggestive in that, during the "cold stand" identification, Mr. Anderson saw the stolen vehicle parked nearby and saw the Appellant taken from a patrol car while handcuffed. Nevertheless, the trial court upheld the "cold stand" identification and explained that the other factors outweighed the minor imperfections of the "cold stand" identification.
 {¶ 26} Under these circumstances, we find that the basis of the "cold stand" identification was reliable. Accordingly, the trial court did not err in denying Appellant's motion to suppress. Appellant's first assignment of error is without merit.
 {¶ 27} Appellant's second assignment of error states:
 {¶ 28} "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PROVIDE AN EXPERT ON THE RELIABILITY OF EYEWITNESS TESTIMONY."
 {¶ 29} In order to demonstrate ineffective counsel, a defendant must show, not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052; State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra, at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, at paragraph two of the syllabus. See, also, Strickland, supra, at 687.
 {¶ 30} The Appellant has the burden of proving ineffective assistance of counsel and there is a strong presumption that a properly licensed trial counsel rendered adequate assistance. State v. Smith (1985),17 Ohio St.3d 98, 100, 477 N.E.2d 1128. As the Strickland Court stated, a reviewing court "[m]ust indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689. See, also,State v. Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476.
 {¶ 31} The decision to call a witness is a matter of trial strategy, and, absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel. State v. Williams (1991),74 Ohio App.3d 686, 695, 600 N.E.2d 298. Furthermore, the failure to call an expert witness and instead rely on cross-examination does not in itself constitute ineffective assistance. See State v. Madrigal,87 Ohio St.3d 378, 400, 2000-Ohio-448, 721 N.E.2d 52; State v. Nicholas
(1993), 66 Ohio St.3d 431, 436, 613 N.E.2d 225; State v. Thompson
(1987), 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407 (concluding that counsel was not ineffective for choosing to cross-examine the state's expert instead of requesting the appointment of a forensic pathologist).
 {¶ 32} Appellant has not met his burden in establishing that the trial strategy of defense counsel in cross-examining the eyewitness, rather than providing an expert on the reliability of eyewitness testimony, amounted to deficient representation and prejudice to the defense. A review of the record in this case reveals that counsel's decision not to call an eyewitness identification expert was well within the standard of reasonable trial tactics. In this case, the victim, Mr. Anderson, sat in the same vehicle less than two feet away from the Appellant for over an hour in broad daylight. He had ample time to view the Appellant and in fact stated that he turned on several times and looked at the Appellant, who was not wearing any form of disguise.
 {¶ 33} In light of this overwhelming evidence of Appellant's guilt, defense counsel "chose perhaps the only strategy available, viz., that of questioning [Mr. Anderson's] perspective." State v. Day, Cuyahoga App. No. 79368, 2002-Ohio-669. In cross-examining Mr. Anderson, defense counsel concentrated on his less than accurate description of the Appellant's height and weight, non-description of the Appellant's teeth and the alleged suggestive nature of the "cold stand" identification.
 {¶ 34} "Given the foregoing, it is mere speculation to assert an expert witness in identification would have been crucial to appellant's defense." Day, supra, citing State v. Kelly (July 12, 2001), Cuyahoga App. No. 78422. Accordingly, Appellant has failed to establish that defense counsel's representation was deficient and that he was prejudiced by counsel's failure to call an expert. Therefore, Appellant's second assignment of error is without merit.
 {¶ 35} Appellant's third assignment of error states:
 {¶ 36} "TRIAL COUNSEL WAS INEFFECTIVE FOR PERMITTING, WITHOUT OBJECTION THE DETECTIVE TO SUMMARIZE THE COMPLAINING WITNESS' STATEMENTS TO POLICE AND BOLSTER THE WITNESS' TRIAL TESTIMONY."
 {¶ 37} As stated previously, in order to demonstrate ineffective counsel, a defendant must show that his counsel's representation was deficient and that the deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 38} Appellant maintains that defense counsel was deficient when she failed to object during Detective Parisi's testimony at the trial of this matter. In making this assertion, Appellant claims Detective Parisi's testimony was ripe with hearsay and bolstered another witness' testimony. Appellant, however, does not specifically indicate the testimony he believes to be improper except by referencing two pages in the trial transcript. Because we are unsure which part of Detective Parisi's testimony Appellant believes is inadmissible, we will address each of the Detective's statements on the pages referenced by Appellant.
 {¶ 39} First, Detective Parisi, when asked the type of information he gathered from the victim, stated: "When we spoke to the victim, he indicated that he was a landscaper. He was doing some work in the city of South Euclid on Dill Road. He was approached by a man who had jumped into his vehicle, put a gun to his side, and demanded that he drive him into the city of Cleveland." We find that defense counsel was not deficient in failing to object to this statement.
 {¶ 40} Ohio R. Evid. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." "Where an out-of-court statement is offered without reference to its truth, it is not hearsay." State v. Lewis (1970), 22 Ohio St.2d 125, 132-33,258 N.E.2d 445. Accordingly, "statements which are offered to explain a police officer's conduct while investigating a crime are not hearsay, as the statements are not offered for their truth." State v. Price (1992),80 Ohio App.3d 108, 110, 608 N.E.2d 1088. See, also, Ohio v. Jackson
(Apr. 20, 2000), Cuyahoga App. No. 76141.
 {¶ 41} In the case sub judice, Detective Parisi testified as to the information he gathered from the victim. Although Detective Parisi testified prior to the victim, he did not offer the statements for the truth of the matter asserted, but to explain the investigation. Thus, Detective Parisi's statement was not hearsay and defense counsel was not deficient in failing to object.
 {¶ 42} Next, Detective Parisi testified as to the victim's identification of the Appellant. Detective Parisi stated "I asked the victim, Percy Anderson, for a description of the offender. He did give me that. And he indicated that he would definitely be able to identify this party because he was in the truck with him for such a lengthy time, according to his words. * * * He indicated that the suspect was a black male, approximately, six foot, approximately 180 pounds, very dark complected skin, was wearing light colored — like, a light gray colored nylon pants and white sneakers." Again, we find that defense counsel was not deficient in failing to object to these statements.
 {¶ 43} Persons other than the declarant may give testimony as to prior consistent statements. See, e.g., State v. Stringfield (1992),82 Ohio App.3d 705, 713, 612 N.E.2d 1327. Evid.R. 801(D)(1) governs statements that are not hearsay and reads in pertinent part: "A statement is not hearsay if: (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (c) one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification."
 {¶ 44} In this case, the victim, Percy Anderson, later testified at the trial of this matter and was subject to cross-examination. Additionally, Detective Parisi's statements related to Mr. Anderson's identification of the Appellant. As such, these statements do not constitute hearsay. Hence, defense counsel was not ineffective for failing to object to Detective Parisi's testimony.
 {¶ 45} Finally, we note that even if the statements were not admissible and defense counsel was ineffective for failing to object to the testimony, there was no reasonable probability that such testimony contributed to Appellant's conviction. Because the victim's testimony was itself sufficient to convict the Appellant, we cannot say that the introduction of Detective Parisi's statements was outcome determinative. Accordingly, the error would have been harmless and therefore would not have been grounds for reversal. See State v. Brown, 65 Ohio St.3d 483, 485,1992-Ohio-61, 605 N.E.2d 46. Appellant's third assignment of error is without merit.
Appellant's fourth assignment of error states:
 {¶ 46} "THE TRIAL COURT ERRED IN OVERRULING MR. FREEMAN'S MOTION TO DISMISS FOR WANT OF SPEEDY TRIAL."
 {¶ 47} Our standard of review upon an appeal raising a speedy trial issue is to simply count the days as directed in R.C. 2945.71 et seq.Cleveland v. Seventeenth St. Assoc. (Apr. 20, 2000), Cuyahoga App. No. 76106; State v. Saikus (Mar. 12, 1998), Cuyahoga App. No. 71981. Where we find ambiguity, we construe the record in favor of the accused. State v.Mays (1996), 108 Ohio App.3d 598, 609, 671 N.E.2d 553; State v.Singer (1977), 50 Ohio St.2d 103, 109, 362 N.E.2d 1216.
 {¶ 48} Appellant contends that he is entitled to discharge pursuant to R.C. 2945.71 through 2945.73, the Criminal Code's speedy trial provisions. R.C. 2945.73 provides as follows: "(B) Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code."
 {¶ 49} R.C. 2945.71 provides in pertinent part:
 {¶ 50} "(C) A person against whom a charge of felony is pending:
 {¶ 51} "* * *
 {¶ 52} "(2) Shall be brought to trial within two hundred seventy days after his arrest.
 {¶ 53} "* * *
 {¶ 54} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section."
 {¶ 55} In other words, a felony defendant in Ohio must be tried within 90 days if incarcerated on the pending charge or within 270 days if on bail. R.C. 2945.71(C)(2) and (E). The triple-count provision, however, only applies when the person is being held in jail solely on the pending charge. State v. MacDonald (1976), 48 Ohio St.2d 66, 71, 339 N.E.2d 40. Thus, the 90 day period of R.C. 2945.71 does not apply when a defendant is being held on multiple charges pending separate trials. State v. Ladd
(1978), 56 Ohio St.2d 197, 383 N.E.2d 579; State v. Kaiser (1978),56 Ohio St.2d 29, 381 N.E.2d 633.
 {¶ 56} In the case sub judice, Appellant was not entitled to the triple-count provision, as he was not being held solely on the pending charges. On December 2, 2003, the Appellant was indicted for this matter, Case No. CR-445585. Previously, on November 19, 2003, the Appellant was indicted on Case No. CR-444871. Both of these indictments were due to completely different circumstances. Had the prosecutor decided to drop the charges in this case, Case No. CR-445585, Appellant would still be incarcerated on the other charges for Case No. CR-444871. Accordingly, Appellant is not afforded the "three for one" or "triple count" and the State was required to bring the Appellant to trial within 270 days of his arrest.
 {¶ 57} Appellant, therefore, had a right to be tried within 270 days of October 8, 2003, unless an extension was applicable pursuant to R.C.2945.72. At the commencement of the trial of this matter on July 15, 2004, the trial court determined that Appellant was arrested on October 8, 2003. Thus, the Appellant was incarcerated from October 8, 2003 to July 15, 2004, for a total of 285 days. Appellant, however, was not entitled to a discharge under the speedy trial provisions because an extension pursuant to R.C. 2945.72 was applicable.
 {¶ 58} R.C. 2945.72 specifies the reasons for which a trial court may extend the limits of R.C. 2945.71. Subdivision (B) provides that the time within which the accused must be brought to trial may be extended by "[a]ny period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial." R.C. 2945.71(B).
 {¶ 59} In the instant matter, the state was required to bring Appellant to trial within 270 days of his arrest. At the time of the trial, Appellant had been incarcerated for 285 days. The record reveals, however, that Appellant was referred to the psychiatric clinic on May 13, 2004 for a competency evaluation and the hearing on the report was on July 19, 2004. The court, pursuant to R.C. 2945.72(B), calculated the period during which Appellant's mental competence to stand trial was being determined as 60 days. The trial court then subtracted the 60 days from the 285 days the Appellant had been incarcerated before trial and determined that 225 days had actually elapsed, 45 days less than the statutory limit. Accordingly, the trial court properly denied Appellant's motion for a speedy trial. Therefore, Appellant's fourth assignment of error is without merit.
 {¶ 60} Appellant's fifth assignment of error states:
 {¶ 61} "THE TRIAL COURT ERRED IN FAILING TO HOLD AN EVIDENTIARY HEARING REGARDING MR. FREEMAN'S MOTION TO DISMISS FOR WANT OF A SPEEDY TRIAL."
 {¶ 62} With regard to Appellant's fifth assignment of error, this court finds that there is no statute, Rule of Criminal Procedure or case law which requires a trial court to conduct an evidentiary hearing on a motion to dismiss for want of speedy trial. On the contrary, a number of courts have found that the trial court need not hold an evidentiary hearing on a speedy trial motion if the court is able to determine the issue from the record. See Whitehall v. Rovnak (Dec. 24, 1990), Franklin App. No. 92AP-919; State v. Wilson (Jan. 22, 1981), Holmes App. No. 323.
 {¶ 63} In the case sub judice, while the trial court did not conduct an evidentiary hearing, the trial court was able to determine the speedy trial issue from the record. On July 18, 2004, four days after the commencement of trial, the trial court addressed the speedy trial motion by referring to the docket and stating: "The Court did the following calculation: From October 8th to today was 285 days. * * * Then the court needs to subtract — the first thing you need to subtract is the period of time that this matter was in the psychiatric clinic. The docket reflects that this matter was in the psychiatric clinic, referral having been made May 13, 2004, and hearing on the report being July 9th, 2004. The Court has counted those days. That constitutes 60 days. Two hundred eight-five minus 60 days means that 225 days have elapsed.
Now, there's also a tolling for any motion filed by the defendant, and the defendant has himself filed multiple motions to dismiss and for a speedy trial. I'm not even subtracting those at this point in time. I'm just using the referral to the clinic, and I find that 225 days have elapsed. Therefore, the defendant's motion for speedy trial is denied, and we are prepared to go forward. I hope we are prepared to go forward."
 {¶ 64} As the trial court was capable of determining the speedy trial issue from the record, this Court finds that Appellant has failed to demonstrate any prejudicial error arising from the trial court's failure to conduct a formal evidentiary hearing on Appellant's motion to dismiss. Appellant's fifth assignment of error is without merit.
 {¶ 65} Appellant's sixth assignment of error states:
 {¶ 66} "THE TRIAL COURT ERRED IN SENTENCING MR. FREEMAN TO A TERM OF INCARCERATION BEYOND THE MINIMUM WHERE MR. FREEMAN DID NOT ADMIT TO A PRIOR TERM OF INCARCERATION AND A JURY DID NOT FIND THE FACT BEYOND A REASONABLE DOUBT."
 {¶ 67} Appellant argues that the trial judge should not have imposed a sentence beyond the minimum without a jury making findings as to, or the Appellant admitting to, his prior convictions. However, in accordance with R.C. 2929.14(B) and Blakely v. Washington (2004), ___ U.S. ___,158 L. Ed.2d 403, 124 S.Ct. 2531, since Appellant had 20 prior convictions and ten to twelve prior admissions to the state penal institution, Appellant was subject to a sentence beyond the statutory minimum.
 {¶ 68} R.C. 2929.14(B) provides that the trial court must impose the minimum sentence on an offender unless the court finds one or more of the following applies: "(1) the offender was serving a prison term at the time of the offense, or the offender previously had served a prison term; or (2) the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B).
 {¶ 69} Furthermore, while the Supreme Court in Blakely ruled that the Constitution barred judges from making factual findings that led to increased sentences, it carved out one exception: findings that related to prior offenses. Blakely, supra, at 2537. As the Court in Blakely
iterated, "[t]his case requires the Court to apply the rule of Apprendiv. New Jersey, 530 U.S. 466, 490, 147 L. Ed.2d 435, 120 S.Ct. 2348, that, `[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Blakely,
supra, at 2536 (Emphasis added).
 {¶ 70} In the instant action, the trial court correctly determined that the Appellant falls within the first exception to R.C. 2929.14(B), "the offender previously had served a prison term," and the prior conviction exception reiterated in Blakely. In making this determination, the trial court stated: "The court has reviewed the requirements of Senate Bill 2. To acquiesce to the decision of the victim would be 26 years in prison on this case. The court does find — although what happened here certainly was an escalation of Mr. Freeman's previous activity that he described as boosting, I cannot, having heard many cases of aggravated robbery, necessarily find that this is the worst form of the offense. I do find, however, that Mr. Freeman has 20 prior convictions in this county . . . it looks like he has had ten to twelve separate admissions to the state penal institution."
 {¶ 71} In this assignment of error, Appellant maintains that because he did not admit to the convictions, the fact of his prior convictions and incarcerations should have been determined by a jury. Appellant's contention, however, is completely erroneous, as "the United States Supreme Court noted in Apprendi that recidivism is a traditional basis for increasing an offender's sentence, and that procedural safeguards typically surround the `fact' of a prior conviction." State v. Gambrel
(Feb. 2, 2001), Miami App. No. 2000-CA-29, citing Apprendi v. NewJersey, 530 U.S. 466, 488, 147 L. Ed.2d 435, 120 S.Ct. 2348. "Obviously, the existence of a prior conviction or the status of a defendant as a probationer, parolee, etc., would not normally be disputed." Gambrel,supra.
 {¶ 72} Here, Appellant did not challenge the trial court's reference to the Appellant's prior convictions and incarcerations at the sentencing hearing. Therefore, we would be justified in assuming that the court's information was accurate, even though such assumption is not necessary. Thus, because the Appellant in this case had 20 prior convictions in one county and ten to twelve prior admissions to the state penal institution, the trial court was within the bounds of law to sentence Appellant to a term of imprisonment beyond the minimum imposed by law. Accordingly, Appellant's sixth assignment of error is without merit.
The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., Concurs. Cooney, J., Concurs in Judgment only