{¶ 1} Appellant Donnell Jackson appeals the trial court's denial of his motion
 {¶ 2} to suppress. He assigns the following two errors for our review:
 "I. The lower court's denial of Mr. Jackson's motion to suppress out of court identifications was against the manifest weight of the evidence."
 "II. The lower court's denial of Mr. Jackson's motion to suppress out of court's identification is not supported by sufficient evidence."
 {¶ 3} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 Suppression Hearing {¶ 4} The state charged Jackson with felonious assault, robbery and aggravated robbery for attacking Charles Gaddis and Nicole Hughes. Jackson's attorney filed a motion to suppress the victims' "cold-stand" identification of Jackson.
 {¶ 5} On October 11, 2005 at around 10:00 p.m., Charles Gaddis and Nicole Hughes were walking on East 65th Street when they were assaulted by two men.
 {¶ 6} The victims testified that the area where the assault occurred was well-lit. They were in front of a store, and there were street lights.
 {¶ 7} Before the assault, they walked past a car and heard one of the occupants state, "Bang, bang, bang." This action caused Hughes to look at the two occupants of the car. Thereafter, they exited the vehicle and approached Hughes *Page 3 
and Gaddis. Hughes described one of the men as tall and "thick" and the other as short. The taller man assaulted Gaddis. According to Hughes, the assault occurred only a few feet from her, and because the taller suspect faced her during the assault, she had an opportunity to observe him.
 {¶ 8} Gaddis testified that he never lost sight of his assailants and that the taller one was four inches from his face during the assault. He estimated the assault lasted eight-to-ten minutes. He described his assailant as a tall, black male with a wide-mouth and smudge nose. He also told police he was wearing a black hoody and a skull cap.
 {¶ 9} Officers Gonzalez and Nuti received a radio broadcast regarding the assault at around 11:00 p.m. At the hearing, they could only recall that one of the suspects was described as a tall, strong black male. However, they remembered the suspects' vehicle was described as a maroon Lincoln with a temporary tag. At around 1:00 a.m. they observed the car at a gas station. The occupants of the car were a young black male and female. Officer Gonzalez did not believe the young male met the physical description of the suspect because he did not appear muscular. The young male told him that he had borrowed the car from his cousin Reginald Walker, and his cousin's friend, Donnell Jackson. He also told the officers where Walker lived. *Page 4 
 {¶ 10} The officers proceeded to the address and discovered Reginald Walker was not at home. However, his mother told police that Jackson lived across the street. The officers proceeded to Jackson's house to question him. Jackson denied being involved in the assault. However, because he had an outstanding warrant, the officers arrested him. On the way to the station, the officers stopped at Metro Hospital where Charles Gaddis was being treated.
 {¶ 11} Officer Gonzalez first asked the victims to describe the assailants. The officer then told them he had a person in custody who may be the suspect. The victims were separately taken to the Metro life flight area to view the suspect from a viewing area which had a tinted window. Each victim was able to view the suspect from this window, but the suspect could not see them. The only person in the area with each victim during the viewing was a nurse. The victims were separated during the identification process.
 {¶ 12} Gaddis was absolutely sure the suspect was his assailant. Gaddis described the assailant as having a smudged nose, that he would never forget. Hughes was ninety-eight percent sure it was the suspect.
 {¶ 13} Based on the above evidence, the trial court denied Jackson's motion to suppress. Jackson subsequently pled no contest to one count of felonious assault, two counts of robbery, and one count of aggravated robbery. The trial court sentenced him to a total of eight years in prison. *Page 5 
 Motion to Suppress Improperly Denied {¶ 14} We address Jackson's two assigned errors together because they both argue the trial court erred in overruling his motion to suppress the results of the cold-stand identification.
 {¶ 15} In State v. Curry,[1] this court set forth the scope of our review regarding a motion to suppress and stated:
 "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay
(1973), 34 Ohio St.2d 250, 63 Ohio Op.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor
(1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908."
 {¶ 16} In a "cold stand," the victim, in a relatively short time after the incident, is shown only one person and is asked whether the victim can identify the perpetrator of the crime.[2] A "cold-stand" identification is permissible unless there is a substantial likelihood of misidentification.[3] It is the likelihood of misidentification that violates a defendant's right to due process.[4] *Page 6 
 {¶ 17} This court has previously explained the conditions necessary for a proper "cold-stand" identification. A "cold stand" is permissible as long as the trial court considers the following factors: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of the time between the crime and the confrontation."[5] Jackson contends that none of the five factors was satisfied. We disagree.
 {¶ 18} Both victims had an opportunity to view the suspect. The assault occurred in a well-lit area. Both victims were in close proximity to Jackson. Gaddis testified that he observed the suspect as he approached him and that while he was being assaulted, he was four inches from his face. Hughes also testified she observed Jackson as he approached; the assault occurred a few feet from her; and, Jackson faced her during the assault. Because Jackson was the main actor of the assault, both of the victims' attention was focused on him.
 {¶ 19} Both victims were also certain Jackson was the suspect. Hughes stated she was ninety-eight percent sure he was the suspect. Gaddis testified he was *Page 7 
absolutely positive Jackson was the suspect because he "would never forget that smudge nose." The "cold-stand" also occurred two hours after the altercation. Therefore, only a short-time period elapsed between the assault and the identification.
 {¶ 20} The only element that is at issue is whether the victims' prior identifications closely matched Jackson. Jackson contends the victims' prior descriptions of the suspect were vague. Hughes only recalls telling the officers the suspect was tall and "thick." However, she stated she would definitely know him if she saw him again.
 {¶ 21} Gaddis, however, provided officers with a more detailed description. He told them the suspect was a tall, black man with a smudge nose, who was wearing a black hoody and skull cap. Additionally, the testimony indicates Officer Gonzalez asked Gaddis for a description prior to showing him Jackson. Gaddis not only told him the suspect was black, tall, and strong, but was adamant that the suspect had a smudge nose. Therefore, there was evidence that Jackson was described sufficiently prior to him being shown to the victims.
 {¶ 22} Jackson also contends there was no basis to present him to be identified. However, the driver of the car informed police that he borrowed the car from Jackson and Reginald Walker. Therefore, there was a basis to believe that Jackson was involved in the assault. Although the officer did not arrest the driver of *Page 8 
the car, that was because the officer believed the driver's build did not match the description given. Moreover, he did obtain the driver's name and address before releasing him. The driver of the car also did not have a pending warrant.
 {¶ 23} Based on the record before us, we conclude the trial court's decision to deny the motion to suppress was supported by sufficient, competent evidence. Accordingly, Jackson's two assigned errors are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, P.J., and ANN DYKE, J., CONCUR
[1] (1994), 95 Ohio App.3d 93, 96.
[2] State v. Freeman, Cuyahoga App. No. 85137, 2005-Ohio-3480.
[3] See State v. Madison (1980), 64 Ohio St.2d 322.
[4] Neil v. Biggers (1972), 409 U.S. 188, 198, 93 S.Ct. 375,34 L.Ed.2d 401; State v. Jells (1990), 53 Ohio St.3d 22, 27.
[5] State v. Thompson, Cuyahoga App. No. 79938, 2002-Ohio-2390, citingNeil v. Biggers (1972), 409 U.S. 188, 34, 93 S.Ct. 375 L.Ed.2d 401. *Page 1