DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, in which appellant, Ronald G. Crosby, was found guilty of one count of burglary, in violation of R.C.2911.12(A)(2), and was sentenced to serve six years in prison. On appeal, appellant sets forth the following two assignments of error:
 {¶ 2} "Assignment of Error Number One: PGPage 2
 {¶ 3} "The trial court erred in denying appellant's motion to suppress the one on one identification.
 {¶ 4} "Assignment of Error Number Two:
 {¶ 5} "The sentence imposed by the trial court was excessive and contrary to law when the sentence exceeded the minimum term of imprisonment on the basis of findings made by the trial judge pursuant to a facially unconstitutional statutory sentencing scheme."
 {¶ 6} On December 30, 2002, Paul Walsh saw an unfamiliar vehicle back into the driveway of his next door neighbor, Barbara Walker, and park in front of Walker's garage. Walker was not home at the time. Walsh then saw a man exit the vehicle, walk up to Walker's front door, and knock on the door. When no one answered, the man walked around to the back of the house. At that point, Walsh picked up a handgun, put it in his belt, and walked over to his neighbor's home.
 {¶ 7} Upon approaching Walker's back door, Walsh noticed the door was broken. Walsh then walked onto the mud porch, where he saw a man standing in Walker's kitchen. The man approached Walsh and hit Walsh in the face with his fist. When Walsh pulled out his gun, the man turned and ran out the front door. Walsh stayed at the side of the house and called to his wife to notify the police. When the police arrived, Walsh described the man as a black male with a "scruffy" beard, about six feet tall, wearing a blue sweat shirt, a varsity-style jacket, and a stocking cap. *Page 3 
 {¶ 8} While police were searching the neighborhood, a nearby resident reported seeing an unfamiliar person running down the street. Police officers followed the neighbor's directions and noticed footprints in the snow. The footprints led them to appellant, who was lying face-down under a bush, approximately 50 yards from Walker's house. Appellant was placed under arrest, and Walsh was driven by in a police car. Walsh identified appellant as the man who broke into Walker's home and punched him in the face.
 {¶ 9} On February 4, 2003, appellant was indicted by the Lucas County Grand Jury on one count of burglary, in violation of R.C. 2911.12(A)(2), a second degree felony, and one count of possession of criminal tools, in violation of R.C. 2923.24, a fifth degree felony. Before the case was brought to trial, defense counsel filed a motion to suppress Walsh's identification of appellant as the man who broke into Walker's home. On the first day of appellant's jury trial, a hearing was held on the motion to suppress, at which testimony was presented by Walsh and Toledo Police Department officers James Schlievert and Eric Board.
 {¶ 10} Walsh testified at the hearing that he and appellant were an "arm's length" away from each other in Walker's kitchen, when appellant approached Walsh and struck him in the face. Walsh further testified that, after appellant ran from the house, Walsh went to appellant's vehicle and removed the keys from the ignition. Walsh stated that, when he identified the appellant as his assailant, appellant was not wearing a jacket or a *Page 4 
hat; however, "he [appellant] had the same sweatshirt on and I was close enough to identify him."
 {¶ 11} On cross-examination, Walsh stated that he is unable to see distances clearly without corrective lenses. He further stated that he first noticed a vehicle in Walker's driveway at approximately 5 p.m., when it was "borderline dusk." Walsh testified that he and the intruder were together in Walker's house for less than one minute. On redirect, Walsh testified that, when he saw the intruder inside Walker's house, the kitchen light was turned on. He further testified that the door was kicked in, and the molding and kick plate had come off.
 {¶ 12} Officer Schlievert testified at the suppression hearing that he searched the neighborhood around Walker's home looking for a "black male." Schlievert stated that he saw very fresh footprints in the snow, spaced at a "stride pace" of three to four feet apart. The prints led him to a bush approximately three and one-half blocks from Walker's home, where he found appellant, lying face down in the snow. Schlievert stated, over appellant's objection,[1] that appellant resisted arrest, and repeatedly asked the officer why he was being arrested.
 {¶ 13} On cross-examination, Schlievert testified that it was "dusk" by the time Walsh was driven by to identify appellant; however, a light was shining on appellant at *Page 5 
the time. Schlievert further testified that appellant kept repeating that he ran from Walker's home and hid under the bush because he "knew what [the police] would think."
 {¶ 14} Officer Board testified at the hearing that he was called to Walker's home to investigate a burglary. Upon arriving, Board saw a vehicle in Walker's driveway, a back door that was "kicked in," a neighbor [Walsh] at the home, and a crowbar lying on the kitchen floor. Board stated that Walsh described his assailant as a "black male" and demonstrated the assailant's height by holding up his hand. Board further stated that, after appellant was arrested, Board placed Walsh in a police cruiser and drove him past appellant. Walsh told Board "that's the guy who hit me."
 {¶ 15} After hearing the above testimony, the trial court denied appellant's motion to suppress the one-on-one identification. A jury trial was then held, after which appellant was found guilty of burglary. An acquittal was entered as to the charge of possession of criminal tools.[2]
 {¶ 16} A sentencing hearing was held on May 8, 2003. On May 13, 2003, the trial court filed a judgment entry in which it sentenced appellant to serve six years in prison. A timely appeal was filed from the trial court's judgment. On appeal, the issues presented for our review were whether the trial court erred by: 1) refusing to instruct the jury on the defense of necessity; and 2) permitting the use of Schlievert's prior undisclosed statements, first made at the suppression hearing, to impeach appellant's trial testimony. *Page 6 
On September 3, 2004, we issued a decision and judgment entry in which we found the trial court erred in allowing Schlievert's testimony to be used to impeach appellant at trial. Accordingly, we reversed the trial court's judgment and ordered a new trial. State v. Crosby, 6th Dist. No. L-03-1158, 2004-Ohio-4674.
 {¶ 17} On October 7, 2004, in anticipation of a second trial, appellant filed a motion to suppress Schlievert's statements and a supplemental motion to suppress the one-on-one identification by Walsh, which the state opposed. No new hearing was held. Instead, the trial court relied on the transcript of the suppression hearing held in 2003. On April 5, 2005, the trial court denied both motions to suppress. On May 11, 2005, appellant filed a motion for reconsideration, which the trial court denied on June 21, 2005.
 {¶ 18} On June 22, 23 and 24, 2005, a jury trial was held, after which appellant was again found guilty of burglary. The next day, a sentencing hearing was held. At the hearing, the trial court, after reviewing the record, including the six-year sentence imposed by the trial court in 2003, oral statements made by counsel, the principles and purposes of sentencing in R.C. 2929.11, and the seriousness and recidivism factors in R.C. 2929.12, found no reason to deviate from the original sentence. Accordingly, appellant was sentenced to serve six years in prison, and was ordered to pay fines and the costs of prosecution pursuant to R.C.2929.18(A)(4) and R.C. 9.92(C). A timely notice of appeal was filed on July 26, 2005. *Page 7 
 {¶ 19} In his first assignment of error, appellant asserts that the trial court erred by failing to suppress the one-on-one identification. In support, appellant argues that Walsh's identification was unreliable because: 1) Walsh did not have sufficient opportunity to observe the person he confronted in Walker's home; 2) appellant was not wearing a "varsity jacket" or a hat as described by Walsh when he was found by the police; 3) and the identification was unduly suggestive because appellant was in police custody when he was identified by Walsh.
 {¶ 20} It is well-established that, in deciding whether to grant a motion to suppress, "the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Claytor (1993),85 Ohio App.3d 623, 627; State v. Freeman, 8th Dist. No. 85137, 2005-Ohio-3480, ¶ 18. Accordingly, on appeal, the trial court's findings will be upheld if they are supported by competent, credible evidence. Claytor, supra.
 {¶ 21} A review of the record reveals sufficient competent, credible evidence to support the findings on which the trial court based its decision to deny appellant's motion to suppress. Specifically, the record supports the trial court's findings that appellant was found after police followed footprints in the snow that led to his hiding place under a bush, and that Walsh was definite in his identification of appellant as the man who confronted him in Walker's kitchen. However, we have the additional obligation on appeal to independently determine "whether, as a matter of law, the facts meet the *Page 8 
appropriate legal standard." State v. Torres, 8th Dist. No. 88381,2007-Ohio-2502, ¶ 79, citing State v. Claytor, supra.
 {¶ 22} The legal standard to be met in this case is two-fold. First, the defendant must demonstrate that the challenged identification was unnecessarily suggestive. State v. Freeman, supra, ¶ 19. If that burden is met, we must then decide "whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." State v. Torres, supra, ¶ 80, citing State v. Willis (1997),120 Ohio App.3d 320, 324-325. (Other citation omitted.)
 {¶ 23} It is undisputed that appellant was identified by Walsh during a "cold stand" or "one-on-one" identification, in which a witness is shown only one suspect within a relatively short period of time after an incident occurs. Id., ¶ 81. Ohio courts have held that, while this type of identification may be suggestive under certain circumstances, "`it is impermissible only where there is [a] substantial likelihood of misidentification.'" Id., quoting State v. Batey (Sept. 2 1999), 8th Dist. No. 74764. Accordingly, in deciding whether a particular one-on-one identification was impermissibly suggestive, courts are to consider the following five factors: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of the time between the crime and the confrontation."State v. Thompson, 8th Dist. No. 79938, 2002-Ohio-2390, ¶ 14-20, citingNeil v. Biggers (1972), 409 U.S. 188. *Page 9 
 {¶ 24} In this case, it is undisputed that appellant was the only person shown to Walsh for identification, appellant was in custody and standing near a police cruiser when the identification was made, and that he was not wearing a jacket or a hat as described by Walsh. However, the record also shows that Walsh was asked to identify his attacker within a relatively short period of time after the incident in Walker's kitchen took place. In addition, although appellant was not wearing a jacket or a hat, he was wearing a blue sweatshirt as described by Walsh, and he otherwise fit Walsh's physical description of the intruder. Finally, although Walsh admitted he has trouble seeing long distances without his glasses, Walsh stated that he was only an arm's length away from the intruder when they were in Walker's home, and he was unwavering in his identification of appellant as that intruder.
 {¶ 25} This court has considered the entire record of proceedings in the trial court. Upon consideration thereof, we find that the one-on-one identification of appellant was not made under circumstances that were unduly suggestive, so as to create a substantial likelihood of misidentification. Accordingly, the trial court did not err by refusing to suppress the results of the identification. Appellant's first assignment of error is not well-taken.
 {¶ 26} In his second assignment of error, appellant asserts that the trial court erred by re-sentencing him to serve six years in prison since, pursuant to R.C. 2929.14(B), he enjoyed a "statutory presumption" that his new sentence would be limited to a minimum, two-year term. In support, appellant argues that his re-sentencing occurred prior toState *Page 10 v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, in which the Ohio Supreme Court severed those portions of Ohio's statutory sentencing scheme requiring judicial fact-finding before the imposition of any sentence greater than the statutory minimum. Accordingly, appellant concludes that the "retroactive" application of Foster, which permits the trial court to re-impose his six-year sentence, is in conflict with the ex post facto clause of the United States and Ohio Constitutions and, therefore, violates his due process rights. We disagree, for the following reasons.
 {¶ 27} First, pursuant to Foster, trial courts are no longer required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences, and have full discretion to impose a prison sentence within the statutory range. Foster, ¶ 100. It is undisputed that appellant's six-year sentence falls within the permissible range of two to eight years for a second degree felony. R.C.2929.14(A)(2). In addition, in imposing appellant's original sentence and his sentence following remand and retrial, the trial court did not reference any of the statutory sections found unconstitutional inFoster, supra.[3] This court recently held that, under such circumstances, a sentence will not be found void, and the case need not be remanded to the trial court on the basis of Foster, even if the matter was pending review at the time *Page 11 Foster was decided. State v. Friess, 6th Dist. No. L-05-1307,2007-Ohio-2030, ¶ 8, citing Foster, supra, ¶ 103-104.
 {¶ 28} Second, in State v. Friess, supra, we stated that,pre-Foster, the statutory presumption of the lowest prison term did not amount to a guaranteed minimum prison term. Id. ¶ 16. We further stated that, by eliminating judicial fact-finding to overcome those presumptions, the remedy set forth in Foster effectively erased them "as if they never existed." Id., citing State v. Coleman, 6th Dist. No. S-06-023, 2007-Ohio-448, ¶ 19. Accordingly, we concluded that, because criminal defendants were never guaranteed a minimum sentence beforeFoster, and the range of permissible statutory penalties remained unchanged after Foster was decided, "the Foster remedy is not unexpected or indefensible, and as such, does not violate due process."Friess, supra, ¶ 17.
 {¶ 29} Upon consideration of the foregoing, this court finds that the retroactive application of Foster does not amount to an ex post facto law and, therefore, does not violate appellant's right to due process. Accordingly, the trial court did not err by re-sentencing appellant to serve six years in prison. Appellant's second assignment is, therefore, not well-taken.
 {¶ 30} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 12 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., Concur.
[1] Appellant objected to Schlievert's statements because they were made for the first time at the suppression hearing. The objection was overruled, as was appellant's request for a continuance. Those statements were later used to impeach appellant's testimony at trial.
[2] The charge of possession of criminal tools was made because police found a crowbar on the floor of Walker's home. It was dismissed at trial after the crowbar was determined not to belong to appellant.
[3] Pursuant to Foster, only the following statutory sections are unconstitutional: R.C. 2929.14(B), (C), (D)(2)(b) and (3)(b), and (E)(4); R.C. 2929.19(B)(2); and R.C. 2929.41(A). In both cases, before sentencing appellant to serving six years in prison, the trial court stated only that it had considered "the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12." *Page 1