**The STATE of Ohio, Appellee,**

v.

**STRINGFIELD, Appellant.**

[Cite as *State v. Stringfield* (1992), 82 Ohio App.3d 705.]

Court of Appeals of Ohio,
Medina County.

No. 2077.

Decided Oct. 7, 1992.

*Dean Holman,* Medina County Prosecuting Attorney, for appellee.

*Ed Bowers,* for appellant.

CACIOPPO, Judge.

During the evening of September 16, 1991, defendant-appellant, Donald C. Stringfield, went on a shooting spree inside his home in Wadsworth, Ohio. Bruce Lawson, Stringfield's neighbor, visited Stringfield in an attempt to calm him. Stringfield's son invited Lawson into the home. Upon seeing Lawson, Stringfield asked him to sit down and offered him a drink of homemade wine. Lawson accepted.

After a short time, Stringfield reached under a couch, pulled out a gun, and fired approximately five shots in front of Lawson's face. Stringfield then grabbed Lawson in a headlock, pulled him to the ground, jammed the end of the gun into his head, and threatened to blow his brains out. Stringfield's son pleaded with his father not to shoot, and Stringfield released Lawson. Lawson escaped the house, suffering a nick on his head where Stringfield had thrust the gun.

Later that evening, Wadsworth police officers, Lt. David Singleton and Patrolman Jeffrey Berdyck, visited Stringfield's residence at approximately 1:00 a.m. As the officers arrived they heard three gunshots from inside the Stringfield home. Before the officers could safely approach the house to investigate, they observed a pickup truck leaving its driveway. Singleton and Berdyck followed the truck and stopped it. Donald Stringfield exited the truck, yelled at the officers, staggered, and stumbled into the side of the truck. The officers then arrested Stringfield for disorderly conduct.

On November 6, 1989, Stringfield pled no contest to the disorderly conduct charge in Wadsworth Municipal Court. On December 12, 1991, a jury found Stringfield guilty of felonious assault and aggravated menacing in the Medina Court of Common Pleas. Stringfield appeals from his felonious assault and aggravated menacing convictions, asserting ten assignments of error.

### Assignment of Error I

"The trial court erred in overruling appellant's motion to dismiss due to the state's violation of the appellant's constitutional right to be free from double

jeopardy which resulted in the appellant being denied due process of law, and equal protection under the Ohio and the United States Constitution."

■ Both the United States and Ohio Constitutions prevent the government from placing persons accused of a crime in jeopardy for their actions more than once. Fifth Amendment to the United States Constitution; Section 10, Article I, Ohio Constitution. Stringfield claims that once he pled no contest in Wadsworth Municipal Court to disorderly conduct, the state had no right to try him on felonious assault and aggravated menacing charges. We disagree.

Stringfield's disorderly conduct conviction and his felonious assault and aggravated menacing convictions resulted from two distinct acts committed at two separate times. His altercation with Lawson occurred at his home in Wadsworth between 8:00 and 9:00 p.m. on September 16, 1989. Stringfield committed disorderly conduct after the police stopped him in his pickup truck at 1:00 a.m. on September 17, 1989. This court has held that an appellant's double jeopardy rights are not violated when an appellant's conduct is "sufficiently separated in time and place to represent two separate and distinct offenses, and not a single act." *State v. Bloomfield* (July 29, 1987), Lorain App. No. 4182, unreported, at 4, 1987 WL 15102.

Accordingly, appellant's first assignment of error is not well taken.

## Assignments of Error II and III

"II. The trial court erred in permitting the prosecutor to introduce evidence of the appellant's character or a trait of his character, over defense counsel's objection, for the purpose to show he acted in conformity therewith on this particular date, in violation of Ohio Rules of Evidence, Rule 404(A) and Rule 602.

"III. The prosecutor committed prosecutorial misconduct by placing before the jury the belief there was evidence of other crimes, wrongs or acts committed by the appellant with evidence the appellant had shot a gun before this incident thereby denying the appellant his right to due process and a fair trial."

As these assignments of error are related, we discuss them together.

■ When Bruce Lawson testified at trial, the prosecutor asked him about a pickup truck parked near Stringfield's residence. Lawson described the truck as having a broken taillight and blown out window. He went on to explain that he was not sure whether the window had been blown out during this exchange or another one. Stringfield claims that the prosecution improp-

erly used Lawson's testimony to prove that Stringfield had previously acted irresponsibly with his firearm. We disagree.

Evid.R. 404(A) provides that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion * * *." Nevertheless, the state did not offer Lawson's testimony to show that Stringfield had previously gone on shooting sprees in or around his home. Rather, the state offered Lawson's testimony about the truck to corroborate Lawson's previous testimony that he had heard gunshots being fired in Stringfield's residence. The state later linked Lawson's testimony with the testimony of Patrolman Robert Mills. Mills stated that he traced at least one gunshot as going from the house through the truck window.

■ Stringfield also claims that the state's questioning of Lawson violated Evid.R. 602. We agree with the state that this argument has no merit. Evid.R. 602 provides that:

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. * * *"

While Lawson may not have had personal knowledge as to when the damage to the truck occurred, he certainly had personal knowledge of the condition of the truck. He viewed it.

Appellant's second and third assignments of error are not well taken.

## Assignment of Error VIII

"The prosecutor committed prosecutorial misconduct by putting before the jury a prior charge of domestic violence and stating it was a felony. The prosecutor clearly knew this was only a misdemeanor conviction. This was a clear-cut intentional violation of Rule 609 and the prosecutor's attempt to prejudice and sway the jury. The prosecutor's actions denied the appellant's right to due process and a fair trial."

■ In his eighth assignment of error, Stringfield claims that the prosecutor committed misconduct by referring to his misdemeanor conviction for domestic violence as a felony charge of domestic violence. In reviewing a prosecutor's alleged misconduct, we agree with the appellant that a court should look at (A) whether the prosecutor's remarks were improper, and (B) whether the prosecutor's remarks affected substantial rights of the appellant. *United States v. Dorr* (C.A.5, 1981), 636 F.2d 117, 120.

The prosecutor, in this instance, exceeded proper bounds; however, the trial court acted promptly to ensure appellant's right to a fair trial. As soon as the prosecutor referred to the "felony charge," the court temporarily excused the jury and held a sidebar conference with the attorneys. The parties resolved the dispute, and the prosecutor did not mention the term "felony charge" again during the examination.

The prejudice caused by the prosecutor's misconduct is lessened if one reviews the testimony of Mrs. Stringfield. Mrs. Stringfield's testimony revealed that her husband slapped her in the face, attempted to punch her in the face, dragged her on the ground by her hair, and ripped off her blouse. Moreover, she admitted that her husband held off police summoned to the scene of the incident for six hours. Given the graphic content of Mrs. Stringfield's testimony, the prosecutor's one overzealous mistake did not prejudice Stringfield so as to deny him a fair trial.

Appellant's eighth assignment of error is not well taken.

### Assignments of Error IV and V

"IV. The trial court erred in not permitting defense counsel to challenge the alleged victim's credibility and character with the fact the alleged victim was the aggressor due to his drinking and the numerous times he became violent while drinking pursuant to Ohio Rules of Evidence Rule 404(A)(2).

"V. The trial court erred in not permitting defense counsel to cross-examine the alleged victim about his prior robbery conviction and his prior aggravated assault conviction, when the alleged victim had told the appellant about these prior conviction [*sic*] pursuant to Ohio Rules of Evidence Rules 609(A) and 609(B)."

As appellant's fourth and fifth assignments of error are related, we consider them together.

During the course of the trial, the court excluded evidence of Lawson's prior convictions of robbery and aggravated assault. Evid.R. 404(A)(2) governs the admissibility of character evidence of the victim. The rule provides that:

"Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable."

The violent character of a victim is not relevant unless the accused shows he acted in self-defense or out of extreme emotional distress from reasonable provocation. *State v. Homonai* (May 29, 1991), Wayne App. No. 2603, unreported, at 6, 1991 WL 95251, citing *State v. White* (1982), 6 Ohio App.3d 1, 3, 6 OBR 23, 26, 451 N.E.2d 533, 536. See, also, Staff Note to Evid.R. 404(A)(2).

At trial, Stringfield did not raise the issue of self-defense, and the court did not instruct the jury on the issue. Stringfield presented no evidence that a fear of imminent danger caused him to assault Lawson. Stringfield testified that he fired his gun to make Lawson leave his house because he did not feel like talking to him. As Stringfield made no showing that he acted in self-defense or under extreme emotional distress from reasonable provocation, the trial court properly excluded evidence regarding his violent character.

■ Also, the trial court followed the mandate of Evid.R. 609(B) in prohibiting Stringfield from presenting evidence of Lawson's prior criminal convictions. Evid.R. 609(B) provides that:

"Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation, or shock probation, or parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

Lawson's two prior convictions were both over ten years old. Further, Stringfield's counsel first notified the state of his intent to use the convictions on the morning of the trial. The trial court properly concluded that the state had not received sufficient advance written notice of Stringfield's intent to use evidence of the convictions.

Appellant's fourth and fifth assignments of error have no merit.

### Assignment of Error VI

"The trial court erred in permitting Mr. Chabin to testify to hearsay, over defense counsel's objection, when the witness had no personal knowledge of the facts to which he testified."

When cross-examining Lawson, Stringfield's counsel called into question Lawson's memory by suggesting that Lawson was intoxicated when he visited Stringfield. The state called Alan Chabin as its next witness. Chabin lives next door to Stringfield, and Lawson had been visiting Chabin before he went to visit Stringfield. After the incident at Stringfield's, Lawson returned to Chabin's.

Chabin testified that when Lawson returned to his house, Lawson told him that Stringfield had fired gunshots past his face and into the wall. Chabin also testified that Lawson said Stringfield had put a gun to his head and threatened to blow his brains out. Stringfield's counsel objected to this testimony as hearsay, and raises the same complaint in his sixth assignment of error.

Prior to Ohio's Evidence Rules, a majority of courts allowed evidence of prior consistent statements of a witness to rebut a charge of recent fabrication. See, *e.g.*, *Miller v. Piqua Transfer & Storage Co.* (C.P.1950), 57 Ohio Law Abs. 325, 329, 92 N.E.2d 452, 455. Evid.R. 801 provides in part:

"(D) *Statements Which Are Not Hearsay.* A statement is not hearsay if:

"(1) *Prior Statement by Witness.* The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]"

Given this rule, we find that Chabin's testimony was not hearsay. Appellant's cross-examination of Lawson implied that Lawson could not remember the events at Stringfield's. Chabin's testimony of Lawson's consistent statements corroborated Lawson's testimony.

Appellant's sixth assignment of error is not well taken.

### Assignment of Error VII

"The prosecutor committed prosecutorial misconduct by misleading the court and jury as to the time frames that an officer observed damage to a pick-up truck, over the objections of defense counsel, thereby denying the appellant right to due process and a fair trial."

During the course of the trial, the state called Patrolman Robert Mills. The state wanted to show that a bullet fired from inside the Stringfield residence damaged a pickup truck parked behind the residence. At a sidebar conference, appellant raised a continuing objection as to any mention of the damaged truck. The court also raised its concern that the state could not demonstrate when the shots that damaged the truck were fired. The state

**714**

informed the court that Mills had visited Stringfield's residence a few days prior to Stringfield's shooting spree, viewed the truck, and witnessed its changed condition. Mills then testified, however, that he had visited Stringfield's residence six weeks prior to the shooting spree. The court admonished the prosecutor for his lack of knowledge of his witness's testimony, but denied appellant's motions for a mistrial and to strike Mill's testimony.

An appellate court should consider a prosecutor's misconduct in light of the entire case. *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 402, 473 N.E.2d 768, 792. It must be clear beyond a reasonable doubt that absent the prosecutor's misconduct, the jury would have found the appellant guilty. *Id.* at 266–267, 15 OBR at 402–404, 473 N.E.2d at 792–794. *State v. Vrona* (1988), 47 Ohio App.3d 145, 153, 547 N.E.2d 1189, 1199. Applying this standard, we find that the prosecutor's actions did not alter the outcome of the trial. Mills's testimony had little impact in comparison to the testimony of Lawson and Chabin.

Appellant's seventh assignment of error is not well taken.

### Assignment of Error IX

"The prosecutor committed prosecutorial misconduct by intentionally placing before the jury evidence the trial court clearly suppressed by court order, thereby denying the appellant's right to due process and a fair trial."

Before trial, the court ruled that a warrantless, nighttime search of appellant's home had violated the Fourth Amendment. As a result, the court suppressed the introduction of evidence obtained from appellant's home; however, the court also ruled that police officers could testify as to anything they could see inside appellant's house from the outside.[1]

In questioning Patrolman Berdyck about the condition of appellant's home, the prosecutor elicited information about what Berdyck observed from outside the home. Berdyck also testified as to what he saw inside Stringfield's house through its outside windows. In reviewing the prosecutor's actions, we find that he clearly followed the trial court's order, and as a result he did not commit misconduct.

The appellant's ninth assignment of error is not well taken.

### Assignment of Error X

"The court of appeals erred in reversing the trial court's order suppressing evidence of an atomic absorption test which was obtained as a result of an illegal nighttime search of the appellant's home."

---

1. Our discussion of the ninth assignment of error is limited by its scope to a review of the prosecutor's conduct. For this reason, we refrain from ruling on the propriety of the trial court's Fourth Amendment ruling.

In his final assignment of error, Stringfield asks this court to reverse a prior decision we made concerning this case. On September 4, 1991, this court reversed the trial court's suppression of evidence of an atomic absorption test performed on Stringfield. Appellant cannot now ask us to again decide an issue which we have already carefully considered and judiciously reviewed.

Appellant's tenth assignment of error is not well taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLEN, P.J., and REECE, J., concur.