OPINION
{¶ 1} Defendant-appellant, Dexter Harris, (hereinafter, referred to as the "appellant"), appeals the judgment of conviction and sentence of the Common Pleas Court of Marion County sentencing him to a total of eight (8) years in prison on three (3) counts of "unlawful sexual conduct with a minor" in violation of R.C. 2907.04(A) and three (3) counts of "sexual battery" in violation of R.C. 2907.03(A)(9). These convictions stem from allegations that appellant engaged in sexual conduct with his fourteen (14) year old niece (hereinafter, referred to as "the alleged victim," or "L.J.").[1]
 {¶ 2} The pertinent facts and procedural history follow. L.J. and her eleven (11) year-old sister lived with their mother in Marion, Ohio prior to 2003. However, when L.J.'s mother was ordered to report to full-time active service in the United States military, L.J. and her sister moved in with their aunt and uncle, Karen and Dexter Harris, who are the sister and brother-in-law of the alleged victim's mother, respectively.
 {¶ 3} The girls' new living arrangement began in January, 2003 and continued for several months without incident. However, allegations began to surface in July, 2003, that L.J. had been raped by appellant on or about June 29, 2003. Specifically, the boy who was "dating" L.J. during this period of time (referred to herein as "K.H."), called L.J.'s mother on July 2, 2003, and informed her that the appellant had raped L.J. Upon being informed of this, L.J.'s mother called and reported the alleged rape to the Marion Police Department ("MPD"), and a police investigation ensued.
 {¶ 4} As part of the investigation, L.J. and the appellant underwent "sexual assault examinations" at Marion General Hospital, which included having complete physicals performed. In addition, both L.J. and the appellant were asked to provide examiners with samples of their saliva and blood for purposes of DNA analysis. The investigation also included an evidentiary search of the appellant's residence. The MPD was able to collect the sheets and comforter from L.J.'s bed, which is where rape is alleged to have occurred. It was later verified that the sheets and comforter that were found on L.J.'s bed had not been washed or otherwise removed from the bed between the time of the alleged rape and the day on which the MPD conducted its search of the appellant's residence.
 {¶ 5} The sheets and comforter were subsequently analyzed to determine whether they contained the presence of semen. Two stains, one on the comforter and one on the flat bed sheet, were positively identified as containing semen. The stained area from the flat bed sheet was then further tested[2] and revealed the presence of two separate and distinct DNA profiles. The two DNA profiles taken from the same stained area were found to be consistent with the appellant's DNA profile and
L.J.'s DNA profile. Thus, the DNA testing resulted in the conclusion that appellant could not be excluded as the source of the semen found on L.J.'s bed sheet.
 {¶ 6} Based on the foregoing, appellant was indicted on July 17, 2003, and was charged with nine (9) separate felony offenses: three (3) counts of rape, three (3) counts of unlawful sexual conduct with a minor, and three (3) counts of sexual battery. Appellant pleaded not guilty to all of the counts, waived his right to a jury trial, and the matter proceeded to a bench trial commencing on December 18, 2003.
 {¶ 7} Upon conclusion of the state's case-in-chief, counsel for appellant filed a Crim.R. 29(A) motion for acquittal of all nine of the counts originally charged against appellant. The trial court granted appellant's motion for acquittal as to the three counts of rape. The trial court overruled the remainder of the appellant's motion, and the bench trial continued for determination of the six remaining counts.
 {¶ 8} Because there were no eyewitnesses to the alleged crimes, the testimony provided by the alleged victim, L.J., and the appellant were the significant sources of evidence before the trial court. L.J. testified, in pertinent part, that:
 {¶ 9} At approximately 1:00 a.m. on June 29, 2003, she was in her bedroom and was on the telephone with her boyfriend, "K.H.". At which time, appellant entered her bedroom and asked her if he could use the telephone to make a call. She complied with the appellant's request and hung up the phone. Thereafter, at approximately 1:30 a.m., appellant re-entered her bedroom and proceeded to initiate sexual contact with her, which culminated in various sexual acts being performed including sexual intercourse. When the incident came to an end, appellant told her to take a shower. She then went into the bathroom, but before going into the shower, she called K.H. and told him that she had just been raped by her "Uncle Dexter." K.H. told her to stay where she was and that he would run over to see her. She then took a shower and waited for K.H to arrive. At approximately 2:00 a.m., K.H. arrived and was standing outside her first-story bedroom window. She opened the window and began to discuss things with K.H., at which point the appellant re-entered her bedroom and discovered that she was talking to K.H. who was standing outside of her window. Upon seeing K.H., appellant told K.H. to go to the garage and then told L.J. that he would drive her and K.H. to where K.H. lived (i.e., his mother's house), and further, that she should stay the rest of the night with K.H. at K.H.'s (mother's) house. Because she felt had no choice but to do what the appellant told her to do, she followed appellant's instruction, stayed overnight at the house where K.H. lived, and did not return to her aunt and uncle's house until approximately 8:00 a.m. the same morning. Later that same day, when she was spending time with two of her girlfriends, she became emotional, cried, and ultimately told them a detailed account of what had happened to her earlier that morning, including that she had been "raped" by her "Uncle Dexter."
 {¶ 10} Appellant testified on his own behalf and offered a contrasting account of the events during the early morning hours of June 29, 2003. Appellant testified that:
 {¶ 11} He twice stopped outside of L.J.'s bedroom for the sole purpose of asking to use the telephone. Later that same night, upon hearing what he thought was the sound of one of L.J.'s bedroom windows being opened, he looked inside of L.J.'s bedroom where he saw L.J. talking to her boyfriend, "K.H." through her open bedroom window. Upon seeing this, he told L.J. that she should know that K.H. could not be sneaking over in the middle of the night and that her Aunt Karen would be upset if she knew that K.H. was there. So, as to avoid the possibility of disturbing his wife, Karen, from her sleep and upsetting her, appellant offered to drive K.H. back home. However, before he and K.H. made it out of the garage and driveway, L.J., of her own volition, insisted on getting in the car and going along for the ride. Instead of creating any more noise then had already been made, appellant gave in and allowed L.J to go along with him and K.H. After the three of them arrived at the house of K.H.'s mother, L.J. abruptly got out of the car with K.H. and refused to get back in the car and return home with the appellant. Rather, L.J. insisted on staying the night with K.H. Appellant became frustrated and informed L.J. that he was going to report her recent behavior to L.J.'s father, which included appellant's purported knowledge that L.J. had become sexually active with K.H. Nevertheless, L.J. refused, and she stayed overnight with K.H.
 {¶ 12} Appellant further testified he knew the threat of appellant talking to L.J.'s father was upsetting to her. During the time of the alleged events, L.J.'s father had actively been seeking permanent custody of her. However, because L.J.'s father was more strict and authoritarian than her mother, L.J. did not want to live with her father. Consequently, appellant maintains that L.J. had motive to falsely accuse him of rape. In fact, throughout the course of the bench trial, appellant vigorously alleged that L.J. fabricated the entire story of rape so that appellant would not be believed if he chose to speak to L.J.'s father about her behavior.
 {¶ 13} Upon consideration of all of the evidence, including DNA evidence and the testimony provided by both L.J. and the appellant, the trial court, on December 19, 2003, found appellant guilty on all remaining counts: three (3) counts of unlawful sexual conduct with a minor (in violation of R.C. 2907.04(A)), and three (3) counts of sexual battery (in violation of R.C. 2907.03(A)(9)), each of which are felonies of the third degree.
 {¶ 14} On February 2, 2004, the trial court held appellant's sexual offender classification and sentencing hearings. The trial court designated appellant as a "sexually oriented offender," and sentenced appellant to four (4) years in prison for each of the six convictions. However, the trial court ordered that the sentences imposed for the three counts of sexual battery be served concurrently, and, likewise, that the sentences imposed for the three counts of unlawful sexual conduct with a minor to be served concurrently with each other but consecutive to the sentences imposed for the three counts of sexual battery. Thus, appellant was sentenced to an aggregate of eight (8) years in prison.[3]
 {¶ 15} It is from this judgment of conviction and sentence which appellant now appeals and sets forth five assignments of error for our review. For the reasons that follow, we affirm the trial court's judgment of conviction and sentence.
 {¶ 16} For purposes of brevity and clarity, appellant's fourth and fifth assignments of error will be addressed first.
 ASSIGNMENT OF ERROR NO. IV The record contains insufficient evidence to support Mr. Harris'sconviction.
 {¶ 17} In this assignment of error, appellant maintains that the convictions rendered against him on three counts of "sexual battery," as defined by R.C. 2907.03(A)(9), are against the sufficiency of the evidence and, therefore, must be reversed and vacated.
 {¶ 18} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259. Thus, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., at paragraph two of the syllabus.
 {¶ 19} Each sexual battery conviction was for a separate violation of R.C. 2907.03(A)(9), which provides, in pertinent part, that:
[n]o person shall engage in sexual conduct with another, * * * when * ** [t]he other person is a minor, and the offender * * * is a person withtemporary or occasional disciplinary control over the other person.
Emphasis added.
 {¶ 20} Appellant specifically contends that there is no evidence upon which a rational trier of fact could have found that he had either "temporary or occasional disciplinary control" over his niece, L.J., at the time of the alleged sexual assault. Thus, the sole issue to be determined under this assignment of error is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that appellant had either "temporary or occasional disciplinary control" over L.J. during the period of time in issue. For the reasons that follow, we answer this question in the affirmative.
 {¶ 21} This court has previously held in State v. Gorenflo, 3d Dist. No. 9-2000-101, 2001-Ohio-2215, that:
 * * * R.C. 2907.03(A)(9) [is] clearly understood by ordinary peopleto mean that any person in a position of authority over a minor, and whohas the right to discipline that child, is prohibited from takingadvantage of his position of authority by engaging in sexual conduct withthat minor. [Thus,] [o]rdinary common sense informs an individual whenhe is in a position of authority and has disciplinary control,, whethertemporary or occasional, over a minor." Emphasis added.
 {¶ 22} The evidence presented by the state regarding this issue is from L.J., who testified that: while living with her aunt and appellant, she would obey appellant and do what she was told, which included household chores; she had a close relationship with appellant, and would frequently confide in him and seek appellant's advice; and, appellant would occasionally ask her where she was going or what she was doing and would warn her against certain behavior. L.J.'s mother also testified that, prior to leaving for the military, appellant expressly assured her that her "girls would be taken care of." Additionally, appellant was L.J.'s uncle and she lived with her aunt and the appellant for approximately six months.
 {¶ 23} With this evidence before the court, it is clear that, at minimum, appellant had "temporary occasional disciplinary control" over L.J. Accordingly, despite appellant's arguments to the contrary, we find the record herein contains evidence upon which a rational trier of fact could have found that the essential element of "temporary or occasional disciplinary control" had been proven beyond a reasonable doubt.
 {¶ 24} Accordingly, appellant's fourth assignment of error is hereby overruled.
 ASSIGNMENT OF ERROR NO. V Mr. Harris' conviction is contrary to the manifest weight of theevidence.
 {¶ 25} When determining whether a conviction is against the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230. In addition, when reviewing the weight of the evidence, we must also keep in mind that "[t]he discretionary power to reverse a conviction and grant a new trial may only be exercised in exceptional cases where the evidence weighs heavily against conviction." Thompkins, 78 Ohio St.3d at 387.
 {¶ 26} The two criminal offenses for which appellant was convicted, sexual battery in violation of R.C. 2907.03(A)(9) and unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), both require proof that the accused "engaged in sexual conduct with another person."[4] In this assignment of error, appellant asserts that the weight of credible evidence does not weigh in favor of a finding that he "engaged in sexual conduct" with L.J., and, therefore, each of the six counts for which he was found guilty must be reversed and remanded for a new trial as being against the manifest weight of the evidence. We disagree.
 {¶ 27} In support of his contention, appellant raises several matters. First, appellant asserts that the DNA evidence found in L.J.'s bed is not conclusive of the fact that appellant engaged in sexual conduct with her. Rather, appellant testified that approximately one week prior to the night in question, when his wife, Karen, kicked him out of the marital bedroom, he opted to sleep in the bedroom and bed usually occupied by L.J.[5] However, before falling asleep, appellant further testified that he watched a pornographic movie, masturbated, and ejaculated while lying on L.J.'s bed. Second, L.J. had motive to falsely accuse appellant of rape. Third, inconsistencies exist in the testimony of several of the state's witnesses, for example: the portion of L.J.'s testimony regarding the number of times appellant entered her bedroom on the night in question and whether he was clothed or naked when he entered her room; testimony provided by L.J.'s boyfriend, K.H., L.J.'s mother, and L.J. herself, regarding whether L.J. made claims that appellant had offered her money on the night in question. Last, the medical personnel who administered the sexual assault examinations on L.J. and appellant testified that the exams revealed no injuries upon either L.J. or him that were consistent with the types of injuries or evidence commonly found in cases where a person had been sexually assaulted.
 {¶ 28} The original trier of fact is in the best position to judge a witness's credibility and assess the amount of weight to assign to a particular witness's testimony. See DeHass, 10 Ohio St.2d 230. An appellate court may not substitute its judgment for that of the finder of facts as to the credibility of witnesses. See State v. Ramirez, 10th Dist. No 01AP-859, 2002-Ohio-4298, at ¶ 27. Appellant's contention that the DNA evidence does not corroborate L.J.'s version of the night of the reported incident requires the trial court to give credence to appellant's testimony that his DNA was self-deposited on the bed sheet and comforter sometime prior to the night involved herein. However, the trier of fact is not required to believe appellant's uncorroborated testimony in this regard. Additionally, the reliability of appellant's recollection of the events of the evening of the alleged incident with L.J. are called into question by appellant's admission under cross-examination that he snorted three "lines" of cocaine and drank several beers on that evening. As to fabrication of the claims made by L.J.'s claims, assertions that L.J. may have had some motive to fabricate does not establish that she did, in reality, make false accusations against appellant or provide false testimony. Accordingly, it was not unreasonable for the trial court, who observed the demeanor and testimony of each witness first hand, to discount the credibility of the appellant's testimony on these issues.
 {¶ 29} Appellant also contends that inconsistencies render L.J.'s testimony incredible, or at minimum, unreliable. Although there may be some minor discrepancies between L.J.'s testimony and some of her prior statements, upon review of the transcript, we do not find that these discrepancies effectively substantiate the appellant's accusation that the alleged victim lied about the incident. Moreover, when the evidence is taken as a whole, including L.J.'s testimony, the testimony provided by police and medical personnel, L.J.'s boyfriend, K.H., and one of L.J.'s girlfriends[6] regarding prior statements made by L.J to them, and the testimony provided by L.J.'s mother regarding what had been reported to her by K.H., are all consistent on the issue of whether the sexual assault occurred. As such, the finder of fact could have reasonably concluded that L.J. was a credible witness.
 {¶ 30} Finally, appellant points to the testimony provided by the medical personnel who examined L.J. and him and testified that they did not find any injuries or evidence consistent with cases of sexual assault. Appellant, however, neglects the fact that the medical examiners also testified that the lack of actual physical evidence (e.g., presence of the accused's blood, semen, or hair on the victim) or lack of physical injury to either L.J. or the appellant is not conclusive that a sexual assault did not occur. Rather, they testified that, in most cases, their ability to collect reliable evidence tending to prove whether a particular individual had been sexually assaulted is adversely affected if the alleged victim showered prior to the examination, or if more than 72 hours elapsed between the time of the alleged assault and the administration of the examination. In this particular case, the alleged victim, L.J., was not examined until 91 hours after the alleged assault, and her testimony reveals that she had showered at least once prior to the examination, specifically, when the appellant prompted her to do so immediately following the alleged assault.
 {¶ 31} Having given consideration to all of the issues raised by appellant in this assignment of error, and having considered the totality of the evidence, we do not find that the trial court clearly lost its way and created a manifest miscarriage of justice by finding appellant guilty of the all six counts of sexual battery and unlawful sexual conduct with a minor.
 {¶ 32} Appellant's fifth assignment of error is overruled.
 {¶ 33} For clarity of analysis, the appellant's first and second assignments of error have been combined and are as follows.
 ASSIGNMENT OF ERROR NO. II The trial court abused its sentencing discretion when it considered thefacts used to support the rape charges was acquitted of.
 ASSIGNMENT OF ERROR NO. I The trial court erred when it failed to support its findings withreasons to justify the order for Mr. Harris to serve his sentencesconsecutively.
 {¶ 34} In these assignments of error, appellant asserts that the trial court erred during the sentencing phase. Thus, we begin by looking to the portions of the sentencing hearing transcript relevant to the arguments set forth herein by appellant's first and second assignments of error.
 {¶ 35} During the sentencing hearing, the trial court specifically stated on the record that:
[w]hile the court did not find that the state proved beyond areasonable doubt the issue of force in this case, the court does feelthat force was involved as the facts demonstrated, [but] simply was notproved beyond a reasonable doubt. The court is entitled to take thosefacts into consideration when not sentencing for the rape, but sentencingfor the specific facts of this case. Having imposed consecutive terms,[the] court finds that the consecutive terms are necessary to protect thepublic and punish the defendant and the consecutive sentences are notdisproportionate to the purposes and principles of the Revised Code insentencing, and that the case [herein] was committed while the defendantwas under community control sanctions.
 {¶ 36} We begin with the appellant's second assignment of error, in which appellant maintains that, because the trial court had previously acquitted appellant of the three counts of "rape," the trial court abused its discretion by, nevertheless, considering the element of "force" as a factor against appellant in determining appellant's sentence. This issue has been previously decided by the Supreme Court of Ohio, which held that: "* * * consideration of evidence relating to a [previously] dismissed charge [during] the sentencing stage does not constitutereversible error."[7] Emphasis added, State v. Wiles (1991),59 Ohio St.3d 71, 78. Thus, despite appellant's arguments to the contrary, we hold that the trial did not abuse its discretion by considering the element of force when it determined the sentence to be imposed upon appellant.
 {¶ 37} Accordingly, appellant' second assignment of error is overruled.
 {¶ 38} In his first assignment of error, appellant maintains that the trial court's imposition of consecutive sentences is contrary to R.C.2929.19(B)(2)(c). As such, appellant urges this court to modify the trial court's imposition of sentence to an order that the sentences be served concurrently, or, alternatively, that we vacate the trial court's order of sentence and remand the matter for resentencing. See R.C. 2953.08(G)(1) and (2). For the reasons that follow, we do not find this to be a case warranting reversal.
 {¶ 39} Before consecutive sentences may be imposed, the trial court is required to make several findings in accordance with R.C. 2929.14 and R.C. 2929.19. First, the sentencing court must find that consecutive sentences are "necessary to protect the public" or to "punish the offender." R.C. 2929.14(E)(4). Second, the court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public." Id. Finally, the trial court must find the existence of one of the three factors provided by R.C. 2929.14(E)(4) (a-c)[8] to be applicable to the case.
 {¶ 40} In addition to making the above listed findings, R.C.2929.19(B)(2)(c) further requires the trial court to give its reasons for imposing consecutive sentences. See State v. Harlow, 3d Dist. No. 14-04-23, 2005-Ohio-959, at ¶ 17; See also State v. Comer,99 Ohio St.3d 463, paragraph one of the syllabus, 2003-Ohio-4165.
 {¶ 41} Appellant herein does not dispute that the trial court made the necessary findings required by R.C. 2929.14(E), but, rather argues that the trial court did not comply with the mandates of R.C. 2929.19(B)(2)(c) because it failed to state its reasons for imposing consecutive sentences. We disagree.
 {¶ 42} The relevant portion of the sentencing transcript, as set out at the beginning of the discussion on this assignment of error, makes clear that the trial court considered the use of force as a compelling reason for imposing consecutive sentences. Although the trial court did not elaborate on its reasoning, we find that the trial court's discussion of the appellant's use of "force" during the commission of the crimes committed against his fourteen year-old niece constitutes valid reasoning for imposition of consecutive sentences and satisfies the requirements set forth by R.C. 2929.19(B)(2)(c). Thus, we do not find that the trial court's imposition of sentence to be contrary to law. Appellant's first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. III The trial court erred when it admitted hearsay testimony from severalstate witnesses in the form of their prior statements.
 {¶ 43} "[A] trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [a reviewing] court should be slow to interfere." State v. Lowe (1994), 69 Ohio St.3d 527, 532, citations omitted. "[T]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id, quoting State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 44} In this assignment of error, appellant asserts that the trial court erred by admitting hearsay testimony over the objections of his trial counsel. Specifically, appellant takes exception to the trial court's admission of:
(1) the portion of testimony provided by L.J.'s boyfriend, K.H. that hetold L.J., "you can't let something big like this go, it has to be told," and that, if L.J. did not report the alleged rape to anyone within a few days ("by Wednesday" of that week), he would take it upon himself to tell her mother; and,
(2) the portion of the testimony provided by L.J.'s girlfriend regarding statements made to her by L.J., which included a detailed retelling of L.J.'s account of the sexual conduct that allegedly occurred between her and appellant.
For the reasons that follow, we find appellant's arguments not well taken.
 {¶ 45} Evidence Rule 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay testimony is inadmissible unless an exception is provided by constitutional right, statute, or the Rules of Evidence. See Evid.R. 802.
 {¶ 46} Upon consideration, we do not find that the statement of the victim's boyfriend to which appellant objected constitutes hearsay. It is apparent that it was not offered to prove the truth of the matter asserted but to provide context and an explanation for the timing and the reason that K.H. called and reported the alleged rape to L.J.'s mother. There is no dispute that K.H. did in fact call L.J.'s mother, who, in turn, contacted the police which triggered the investigation into the matter.
 {¶ 47} Even assuming, arguendo, that the testimony provided by K.H. as to what he said on the night of the incident was hearsay, the testimony went to showing his state of mind and his intent, plan, and/or motive for how and why he revealed the incident alleged to have occurred between L.J. and the appellant. As such, the testimony provided by K.H. falls within the exception provided by Evid.R. 803(3).[9]
 {¶ 48} We find also the testimony provided by L.J.'s girlfriend was properly allowed under Evid.R. 801(D)(1)(b). This rule provides that a prior statement by a witness is not hearsay if: (a) the declarant testifies at the trial; (b) the declarant is subject to cross-examination concerning the statement; and, (c) the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper motive.
 {¶ 49} As applied to the case sub judice, we find that: (a) L.J., who is the declarant in this instance, testified at the trial that she had told her girlfriend that she had been "raped by her uncle;" (b) the declarant, L.J., was subject to cross-examination; and (c) the witness's testimony (i.e., L.J.'s girlfriend) regarding the statements made by L.J. to her are consistent with L.J.'s own testimony. In addition, the testimony provided by L.J.'s girlfriend regarding the details of the alleged sexual assault that were stated to her by L.J., was also offered, in part, to rebut appellant's express charge that L.J. had fabricated the entire story and that he had been falsely accused of the alleged rape.
 {¶ 50} Based upon the foregoing, we do not find that the trial court abused its discretion in permitting the herein contested portions of the testimony provided by either K.H. or L.J.'s girlfriend. Appellant's third assignment of error is, therefore, overruled.
 {¶ 51} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Shaw and Bryant, J.J., concur.
[1] We note that all minor children mentioned herein are referred to by initial.
[2] Because the DNA analysis portion of the testing actually destroys the sample that is being tested, the stain on the comforter was not put through this second phase of testing, but, rather, was preserved and stored to later be analyzed if necessary.
[3] We further note that the trial court also ordered that the eight year prison sentence was to be served consecutive to a prior prison sentence imposed on appellant in a separate case, (Marion County Common Pleas Court Case No. 00-CR-305), in which appellant was sentenced to six (6) months in prison on a forgery conviction. Thus, appellant was sentenced to a combined prison term of eight years and six months in prison.
[4] The offense of unlawful sexual conduct as defined by R.C. 2907.04(A) provides that:
[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
[5] L.J. was not home on this particular occasion, but rather, was on a trip to Atlanta, Georgia.
[6] We note that of the two girlfriends who L.J. confided in and described what had happened to her, only one was called upon to testify.
[7] In further support of this proposition of law, the Supreme Court of Ohio went on to quote from the United States District Court for the District of Columbia, which observed: "`* * * [i]t is well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted. * * *.'" Id., quoting United States v. Donelson (C.A.D.C. 1982), 695 F.2d 583.
[8] R.C. 2929.14(E)(4) (a-c) provide that the trial court must find one of the following:
(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18
of the Revised Code * * *
(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused * * * was so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
[9] Evid. R. 803(3) provides in relevant part, "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * [t]hen existing, mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) * * *."