OPINION *Page 2 
{¶ 1} Defendant-Appellant, Mark E. McCullough, appeals the May 25, 2007 Judgment Entry of the Court of Common Pleas of Putnam County, Ohio convicting him of domestic violence.
 {¶ 2} In March 2007, the Putnam County Grand Jury indicted McCullough for one count of domestic violence in violation of R.C. 2919.25(A), (D)(4), a felony of the third degree. The indictment arose from an incident involving a physical altercation between McCullough and his live-in girlfriend and child's mother.
 {¶ 3} In April 2007, McCullough entered a plea of not guilty.
 {¶ 4} In May 2007, McCullough and the State filed a "Stipulation of Facts" stating that McCullough had been previously convicted of domestic violence in violation of R.C. 2919.25(A); that he had been previously convicted of abduction in violation of R.C. 2905.02(A)(1); and, that the abduction conviction was an offense of violence against his family or household member. The stipulation was signed by McCullough and his trial counsel.
 {¶ 5} Thereafter, the case proceeded to a jury trial. Immediately prior to witness testimony, the trial court stated on the record that the parties had stipulated that McCullough had been previously convicted of domestic violence and *Page 3 
abduction, and that the abduction was an offense of violence against a family or household member.
 {¶ 6} Additionally, during opening statements, McCullough's counsel made the following statement:
 And you might say as one of your fellow jurors asked me, well, why would [the victim] get up here and lie about it, because people have motives, and people have reasons for doing things that are only known to themselves. Let me give you what I believe is the motive in this case. The motive is how do I get rid of [McCullough], how can I make sure that [McCullough] has no contact with my baby from this point on, I'm tired of [McCullough], how must I do this, I must act like a victim, but wait, before I act like a victim, I must prepare, I will make plans to leave and go out of town, I have relatives there, I can tell everyone from out of town how scared I am of [McCullough], I will tell them all the stories of how [McCullough] has abused me in the past.
(Trial Tr., p. 22).
 {¶ 7} Thereafter, the following testimony was heard.
 {¶ 8} The victim, Sabrina Kistler, testified that she and McCullough began a relationship in April 2005; that, in October 2005, while she was pregnant with their child, McCullough prevented her from leaving their home, dragged her through the street, and then tried to force her into her car; that, around July 2006, he threw a laundry basket at her while she was holding their infant child; that he threatened to kill her if she left him; that he took her keys and locked her car in their garage to prevent her from leaving; that, in October 2006, he pushed her *Page 4 
down and held her down by her throat; that he grabbed her throat on several occasions and scratched her; that, after McCullough had grabbed her throat for putting a pan in the wrong cupboard, her grandfather, Richard Knapp, asked her if he had been abusing her and she showed him bruises on her neck; that, on December 14, 2006, McCullough grabbed her throat, pushed her onto the ground, held her down by her neck, and kicked her in the back of the head; and, that she left their home the next day and stayed temporarily at a domestic violence shelter.
 {¶ 9} Knapp testified that, over a period of approximately six months beginning in July 2006, the frequency of Kistler's contact with him lessened; that Kistler told him that this was because McCullough was taking her cell phone and locking her car in their garage; that he saw bruises on Kistler and she told him that McCullough had grabbed her throat and threatened to kill her because she had put a pan in the wrong place; and, that, from June 2006 until December 2006, Kistler's personality changed because it seemed she "was highly concerned that if anybody said anything [to McCullough,] * * * [he] would get mad and it would make it worse on her." (Trial Tr., p. 97).
 {¶ 10} Lieutenant Mike Schroth of the Ottawa Police Department testified that he had been called to investigate domestic violence incidents between McCullough and Kistler twice; that, in the first incident, McCullough had pushed Kistler and told Lieutenant Schroth that "he was upset because [Kistler] was *Page 5 
pregnant and he did not like that at all" (Trial Tr., p. 107); that, in response to the second incident, he went to McCullough's residence with another officer; that he rang the doorbell to the residence, knocked repeatedly, stated that it was the police, and no one answered; that he continued to knock for seven or eight minutes and then looked through the window and saw McCullough sitting in the living room; that he and the other officer continued to knock and yell, but McCullough did not answer the door; that he obtained a search warrant for the residence; that, after obtaining the warrant, he and several other officers knocked and announced their presence both outside and inside the residence, but received no response; that he observed three two-by-four boards screwed to the wall so that the back door to the residence could not be opened; that he located a trap door inside a closet in the residence, opened it, and noticed a fresh foot print in the crawl space below; that the officers repeatedly called into the crawl space and told McCullough to come out; that eventually they called into the crawl space that they were bringing in a canine unit; and, that McCullough then crawled out of the trap door.
 {¶ 11} The trial court also gave the following instruction on consciousness of guilt as part of its charge to the jury:
 Testimony has been admitted indicating that the Defendant resisted arrest or concealed his whereabouts from law enforcement. You are instructed that resisting arrest or *Page 6 concealing his whereabouts from law enforcement alone does not raise a presumption of guilt, but it may tend to indicate the Defendant's consciousness or awareness of guilt.
 If you find that the facts do not support that the defendant resisted arrest or concealed his whereabouts from law enforcement, or if you find that some other motive prompted the Defendant's conduct, or if you are unable to decide what the Defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the Defendant engaged in such conduct and if you decide that the defendant was motivated by a consciousness or an awareness of guilt, you may, but are not required to, consider that the [sic] evidence in deciding whether the defendant is guilty of the crime charged. You alone will determine what weight, if any, to give to this evidence.
(Trial Tr., pp. 170-71).
 {¶ 12} Thereafter, the jury convicted McCullough of domestic violence and the trial court sentenced him to a five-year prison term.
 {¶ 13} It is from this judgment that McCullough appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE STIPULATION ENTERED INTO BY THE ATTORNEYS IN THE COURT WAS NOT PROPERLY AGREED TO BY THE DEFENDANT.
 Assignment of Error No. II TRIAL COURT ERRED IN PERMITTING CRITICALLY DAMAGING HEARSAY TO BE ADMITTED. *Page 7 
 Assignment of Error No. III DEFENDANT-APPELLANT WAS DENIED RIGHT OF COMPETENT AND EFFECTIVE ASSISTANCE OF COUNSEL.
 Assignment of Error No. IV THE TRIAL COURT GAVE IMPROPER INSTRUCTIONS AS PART OF ITS CHARGE TO THE JURY.
 Assignment of Error No. I {¶ 14} In his first assignment of error, McCullough claims that he did not agree to the stipulation of prior convictions his attorney entered on his behalf. Specifically, McCullough argues that the stipulation to his prior conviction was entered without his knowledge or consent.
 {¶ 15} McCullough was convicted of domestic violence in violation of R.C. 2919.25(A), (D)(4) which provides in pertinent part:
 A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 * * *
 (D)(1) Whoever violates this section is guilty of domestic violence.
 * * *
 (3) Except as otherwise provided in division (D)(4) of this section, if the offender previously has pleaded guilty to or been convicted of domestic violence, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to domestic *Page 8 violence, a violation of section 2903.14, 2909.06, 2909.07, 2911.12, 2911.211, or 2919.22 of the Revised Code if the victim of the violation was a family or household member at the time of the violation, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to any of those sections if the victim of the violation was a family or household member at the time of the commission of the violation, or any offense of violence if the victim of the offense was a family or household member at the time of the commission of the offense, a violation of division (A) or (B) of this section is a felony of the fourth degree, and a violation of division (C) of this section is a misdemeanor of the second degree.
 (4) If the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses, a violation of division (A) or (B) of this section is a felony of the third degree. . .
 {¶ 16} In order to prove McCullough's guilt of domestic violence as a felony of the third degree, the State was required to prove his two prior convictions. R.C. 2945.75(B)(1) provides the necessary requirements for proving a prior conviction, as follows:
 (B)(1) Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction.
 {¶ 17} In the present case, the State was not required to meet the requirements of R.C. 2945.75(B)(1) because prior to trial, McCullough entered *Page 9 
into a stipulation concerning his prior convictions. On May 3, 2007 a stipulation was filed with the trial court stating as follows:
 1. Defendant was previously convicted of Domestic Violence, in violation of Ohio Revised Code Section 2919.25(A), in Putman County Court, case number 90CRB00171-1, and was represented by Attorney Michael O'Malley.
 2. Defendant was previously convicted of Abduction, in violation of Ohio Revised Code Section 2905.02(A)(1), in Putnam County Common Pleas Court case number 99-CRI-41, and was represented by Attorney Gregory Novak. Defendant's conviction of the offense of Abduction was an offense of violence against a family or household member.
 {¶ 18} The trial court read this stipulation, verbatim, to the jury at the beginning of trial. Moreover, in reading this stipulation, the trial court gave the jury a cautionary instruction that they may not consider the evidence of prior convictions to prove McCullough's character. A similar limiting instruction was included in the trial court's final jury instructions.
 {¶ 19} The crux of McCullough's argument in this case is that he, as the defendant, had no knowledge of this stipulation. However, the May 3, 2007 stipulation was signed by McCullough, his attorney, and the prosecuting attorney. McCullough goes so far in his brief as to assert that this stipulation was a "decision made in chambers and acknowledged in the courtroom by the respective counsel." (Appellant's Brief 6). This Court cannot help but find that the May 3, 2007 stipulation, signed by McCullough, directly contradicts this assertion. *Page 10 
 {¶ 20} Moreover, there is a presumption that stipulations are valid, which McCullough would have to overcome to prevail on this argument.
 [A] stipulation, once entered into, filed and accepted by the court, is binding upon the parties and is a fact deemed adjudicated for purposes of determining the remaining issues in that case. A party who had agreed to a stipulation cannot unilaterally retract or withdraw it.
In re Avery, 3rd Dist. No. 12-2000-16, 2001-Ohio-2226 citing Horner v. Whitta (March 16, 1994), Seneca App. No. 13-93-33. McCullough himself signed this stipulation, an indication of not only the assent of his counsel, but his own assent to be bound by this stipulation. Morevoer, neither McCullough or his counsel ever objected to any question as to the use of this stipulation in the trial court.
 {¶ 21} Finally, McCullough cannot use the aid of hindsight to question the wisdom of stipulating to his prior convictions as trial strategy. The Ohio Supreme Court has previously noted that stipulations as to prior conviction often benefit defendants.
 The practice of stipulating a prior conviction generally runs to the benefit of the defendant, as noted by Presiding Judge Milligan in the court of appeals opinion below:
 [S]tipulations to prior convictions are widely recognized as a practice which benefits defendants by precluding the State from introducing evidence as to the details of the prior convictions.
State v. Adams (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361. *Page 11 
 {¶ 22} In the present case, McCullough's stipulation to his prior conviction kept the State from presenting actual witnesses involved with his prior convictions. Had McCullough not stipulated, the State would have been forced to, and was prepared to, call witnesses to meet the requirements of 2945.75(B)(1). For example, the identification evidence may well have included prior victims of these offenses or, at the very least, police detectives who investigated the cases. McCullough may not now retract his stipulation merely because he was dissatisfied with the outcome at trial.[1] Accordingly, McCullough's first assignment of error is overruled.
 Assignment of Error No. II {¶ 23} In his second assignment of error, McCullough contends that the trial court erred in permitting critically damaging hearsay to be admitted. Specifically, he argues that Knapp's testimony concerning statements Kistler made about McCullough abusing her was hearsay; that much of this hearsay testimony was admitted over his objections; and, that he was prejudiced as a result.
 {¶ 24} Trial courts have broad discretion in determining whether to admit *Page 12 
or exclude evidence. Deskins v. Cunningham, 3d Dist. No. 14-05-29,2006-Ohio-2003, ¶ 53, citing Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83. Accordingly, a trial court's ruling on the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion. Id.
 {¶ 25} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Evid. R. 801(D)(1)(b) explains that a prior statement of a witness is not hearsay if:
 The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive[.]
See, generally, State v. Tyler, 50 Ohio St.3d 24, superseded by state constitutional amendment on other grounds as stated in State v.Smith, 80 Ohio St.3d 89, 1997-Ohio-355; State v. Harris, 3d Dist. No. 9-04-11, 2005-Ohio-4618, reversed on other grounds by In re OhioCriminal Sentencing Statutes Cases, 109 Ohio St.3d 313, 2006-Ohio-2109;State v. Stringfield (1992), 82 Ohio App.3d 705.
 {¶ 26} Additionally, "[a]ttacking a victim's credibility during opening statement has been found to constitute sufficient grounds for permitting a prior consistent statement into evidence pursuant to Evid. R. 801(D)(1)(b)." State v. Abdussatar, 8th Dist. No. 86406,2006-Ohio-803, ¶ 15, citing State v. Johnson *Page 13 
(April 26, 1996), 2d Dist. No. 15253; State v. Hoskins (June 28, 1995), 2d Dist. No. 94-CA-42.
 {¶ 27} Here, McCullough's counsel expressly stated in his opening statement that Kistler had fabricated the domestic violence accusation because she wanted to "get rid" of McCullough. Additionally, Kistler testified at trial, was subject to cross-examination concerning the statements, and her testimony was consistent with the statements. Consequently, Knapp's testimony was properly admitted as a prior consistent statement of a witness.
 {¶ 28} Accordingly, we overrule McCullough's second assignment of error.
 Assignment of Error No. III {¶ 29} In his third assignment of error, McCullough contends that he was denied effective assistance of counsel. Specifically, he argues that his counsel did not object to hearsay evidence; that his counsel entered into a stipulation that he was not counseled on and did not agree to; that his counsel failed to present an adequate defense; and, that his counsel failed to negotiate a plea bargain on his behalf.
 {¶ 30} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To show that a defendant has been *Page 14 
prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.State v. Waddy (1992), 63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized by State v.Smith, 80 Ohio St.3d 89, 103, 1997-Ohio-355.
 {¶ 31} Furthermore, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. Strickland v. Washington (1984), 466 U.S. 668; State v.Richardson, 3d Dist. No. 13-06-21, 2007-Ohio-115, citing State v.Hoffman (1998), 129 Ohio App.3d 403, 407. Tactical or strategic decisions, even if unsuccessful, generally do not constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558. Additionally, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance.State v. Fritz, 3d Dist. No. 13-06-39, 2007-Ohio-3138, ¶ 35, citingState v. Malone (Dec. 31, 1989), 2d Dist. No. 10564.
 {¶ 32} First, McCullough argues that trial counsel was ineffective for failing to object to Knapp's testimony at trial, which he claims was hearsay. *Page 15 
However, as already discussed in the second assignment of error, Knapp's testimony was offered to rebut McCullough's charge that Kistler fabricated the domestic violence accusation, and was properly admitted as a prior consistent statement. Moreover, we note that trial counsel objected numerous times to Knapp's testimony as hearsay. Accordingly, McCullough has failed to demonstrate a reasonable probability that, had trial counsel objected to Knapp's testimony, the outcome of the proceeding would have been different. Thus, trial counsel was not ineffective for failing to object to hearsay testimony at trial.
 {¶ 33} Second, McCullough argues that his counsel was ineffective for entering into a stipulation on his behalf. In our disposition of McCullough's first assignment of error, we found that the stipulation to the prior convictions was validly entered, bearing the signatures of counsel, as well as McCullough's own signature.
 {¶ 34} Thus, trial counsel's performance cannot be said to have fallen below objective standards of reasonable representation. Additionally, the stipulations appear to have been sound trial strategy. As the Supreme Court of Ohio has stated, "[t]he practice of stipulating a prior conviction generally runs to the benefit of the defendant[.]" State v.Adams (1988), 37 Ohio St.3d 295, 297. Further, although McCullough contends that he was not counseled on the stipulation and did not agree to it, the record reflects that McCullough signed the *Page 16 
"Stipulation of Facts" which stipulated to his prior offenses. Therefore, we cannot find that McCullough's counsel was ineffective for entering into the stipulations.
 {¶ 35} Third, McCullough argues that his counsel was ineffective for failing to present an adequate defense on his behalf. However, "[t]he decision whether to call a witness is `within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" In reWalker (Dec. 12, 2005), 3d Dist. Nos. 5-05-22 5-05-23, ¶ 14, quotingState v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396. Here, the record provides no evidence supporting a claim that declining to call witnesses was not sound trial strategy. See State v. Martin, 2d Dist. No. 20610,2005-Ohio-1369, ¶ 19. Additionally, McCullough presents no proposals as to any exhibits that may have been presented on his behalf and no potential exhibits are apparent from the record. See State v.Bowens (Aug. 9, 1991), 11th Dist. No. 89-A-1463. Moreover, even if trial counsel had erred in declining to present witnesses or exhibits, McCullough has failed to show a reasonable probability that the outcome of his trial would have been different. Therefore, trial counsel was not ineffective for failing to present an adequate defense.
 {¶ 36} Finally, McCullough contends that trial counsel was ineffective for failing to negotiate a plea bargain on his behalf. However, there is no constitutional right to a plea bargain. State v. Williams (1993), *Page 17 
89 Ohio App.3d 288, 294. Further, nothing in the record indicates that the State would have considered plea bargain negotiations or that such was offered or rejected. See State v. Taylor, 3d Dist. No. 1-03-20, 2003-Ohio-7115, ¶ 46. Therefore, trial counsel was not ineffective for failing to negotiate a plea bargain.
 {¶ 37} Accordingly, we overrule McCullough's third assignment of error.
 Assignment of Error No. IV {¶ 38} In his fourth assignment of error, McCullough contends that the trial court gave improper instructions as part of its charge to the jury. Specifically, he argues that the fact that he did not want the police officers to see him while they were knocking on his door does not give rise to a consciousness of guilt instruction. Additionally, McCullough claims that this instruction was highly prejudicial to him.
 {¶ 39} "A reviewing court will not reverse a conviction in a criminal case due to jury instructions unless it is found that the jury instructions amount to prejudicial error." State v. Satta, 3d Dist. No. 9-01-38, 2002-Ohio-5049, ¶ 47, citing State v. DeHass (1967),10 Ohio St.2d 230, paragraph two of the syllabus. The purpose of jury instructions is to outline the pertinent issues, state the pertinent principles of law, and clarify the jury's role. Bahm v. Pittsburgh Lake Erie Rd. Co. (1966), 6 Ohio St.2d 192. *Page 18 
 {¶ 40} The Supreme Court of Ohio has long held that "[f]light from justice, and its analogous conduct, have always been indicative of a consciousness of guilt * * *[.]" State v. Eaton (1969),19 Ohio St.2d 145, 160, reversed in part on other grounds by Eaton v. Ohio (1972),408 U.S. 935, quoting 2 Wigmore, Evidence (3 Ed.) 111, Section 276. Accordingly, it is well-established that "`the fact of accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" State v. Hall (Sept. 30, 1998), 3d Dist. No. 14-86-29, quoting Eaton, 19 Ohio St.2d at 160, citing 2 Wigmore, Evidence (3 Ed.) 111, Section 276. Courts have found consciousness of guilt instruction proper where a defendant fled the scene of an accident and was found hiding in some bushes,Eaton, supra; where a defendant fled from police and was found hiding in a culvert, State v. Fallon, 9th Dist. No. 23002, 2007-Ohio-1478; and, where a defendant was found concealed in the wall of a trailer,State v. Monroe, 4th Dist. No. 05CA3042, 2007-Ohio-1492.
 {¶ 41} Here, evidence existed that McCullough refused to answer the door to his residence even after the police announced their presence, boarded up the back door, concealed himself in a crawl space accessible through a trap door in a closet, and refused to come out until the police told him that they would bring in a *Page 19 
canine unit. Based on the foregoing, we find that the trial court's instruction on consciousness of guilt was well-supported by the evidence and, thus, proper.
 {¶ 42} Accordingly, we overrule McCullough's fourth assignment of error.
 {¶ 43} Based on the foregoing, the judgment of the Court of Common Pleas of Putnam County, Ohio convicting him of domestic violence is affirmed.
Judgment Affirmed.
 PRESTON, J., concurs.
[1] We further note that in entering into this stipulation, McCullough was not waiving his right to have the State prove these elements beyond a reasonable doubt, but was only agreeing to a more benign method of presenting the evidence necessary to do so to the jury. We believe the arguments posed by the dissent on this issue fail to recognize this important distinction.