DECISION AND JUDGMENT
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas which, following a jury trial, found appellant, Clifford Neal, guilty of robbery, in violation of R.C. 2911.02(A)(2), a felony of the second degree. Appellant was sentenced on March 19, 2007, to five years in prison. *Page 2 
 {¶ 2} Appellant appeals the decision of the trial court and raises the following assignments of error:
 {¶ 3} "I. Appellant Neal meets Colon II criteria for Colon I reversal.
 {¶ 4} "II. Appellant's indictment for robbery was defective by failing to include the mens rea element thereby violating his constitutional rights.
 {¶ 5} "III. The trial court erred in denying defendant's motion to suppress the photo array and the identification of defendant.
 {¶ 6} "IV. Defendant's right to a fair trial was violated by prosecutorial misconduct.
 {¶ 7} "V. The defendant was denied his constitutional right to a fair trial due to cumulative errors."
 {¶ 8} According to the version of the facts presented by appellant, he entered a Subway restaurant on February 18, 2006, and demanded that the employee open the register and give him all the money, at the same time indicating, with his hand in his pocket, that he had a gun. The employee told appellant that she could not open the register without making a sale. Appellant walked to the front door, opened it, looked around, then stepped back into the store, ran towards the cash register, grabbed it, and left the store with the register. Police responded to the store's alarm and found the cash register in the alley behind the Subway building. The employee told police that the robber had bright blue eyes, was a white male with blondish hair, and was wearing a cap, a jacket and blue jeans. The employee did not mention to the police that the assailant had *Page 3 
any tattoos on his neck or hands. Based on a Crime Stopper tip, the police assembled a photo array. The array was discolored with a yellow tint, leaving all the individuals with brown eyes. Nevertheless, the employee selected appellant as the assailant.
 {¶ 9} Relying on State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624
("Colon I"), appellant argues in his first and second assignments of error that the indictment as to the charge of robbery was structurally deficient because it failed to state the requisite mens rea, recklessness. Appellant argues that he was denied his right to due process because he was not properly notified of the elements of the offense and that his conviction should therefore be vacated and dismissed with prejudice.
 {¶ 10} In Colon I, the Ohio Supreme Court examined the effect of a defective indictment under a plain error standard, and held that "[w]hen an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." Id. at syllabus. InColon I, because the mens rea, "recklessness," was missing from the indictment, the court held that the indictment failed to charge all the essential elements of the offense of robbery and, therefore, failed to notify defendant of the mens rea required to commit the offense, which violated his constitutional rights to notice and due process.[1] The court *Page 4 
reversed the conviction, finding that the defect constituted plain error which permeated the entire criminal proceeding and resulted in structural error.
 {¶ 11} On reconsideration, the court declared that Colon I was prospective, and "applies only to those cases pending on the dateColon I was announced." State v. Colon, 119 Ohio St.3d 204,2008-Ohio-3749, ¶ 5 ("Colon II"). The court also stated that "the facts that led to our opinion in Colon I are unique," noting that there was no evidence in that case "to show that the defendant had notice that recklessness was an element of the crime of robbery, nor was there evidence that the state argued that the defendant's conduct was reckless." Id. at ¶ 6. Additionally, the court noted that the trial court had failed to include recklessness as an element of the crime in the jury instructions and, during closing argument, the state treated robbery as a strict-liability offense. Id. Further, the court held inColon II that the "structural-error" analysis for defective indictments is "appropriate only in rare cases * * * in which multiple errors at trial follow the defective indictment." Id. at ¶ 8.
 {¶ 12} In deciphering the ruling in Colon II, this court has concluded that "the structural error analysis will apply to cases which, as indicated by the court, contain the following factors: a defective indictment; the defendant has had no notice of the specific mens rea of the offense where the default is to `reckless;' the jury instructions do not include recklessness as an element of the crime; and the crime charged is treated as a strict-liability offense when the mens rea is `reckless.'" State v. Moss, 6th Dist. *Page 5 
No. L-07-1401, 2008-Ohio-4737, ¶ 17; and State v. Mason, 6th Dist. No. L-06-1404, 2008-Ohio-5034, ¶ 61.
 {¶ 13} In this case, appellant's appeal was pending on April 9, 2008, when Colon I was released. Colon II at ¶ 5. Appellant was indicted for violating R.C. 2911.02(A)(2), robbery. As to the robbery charge, the indictment stated in pertinent part that appellant "on or about the 18th day of February, 2006, in Lucas County, Ohio, in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense as defined in § 2913.02 of the Revised Code, did knowingly inflict, attempt to inflict, or threaten to inflict physical harm of another, in violation of § 2911.02(A)(2) OF THE OHIO REVISED CODE, ROBBERY, BEING A FELONY OF THE SECOND DEGREE * * *."
 {¶ 14} In setting forth the elements of robbery, R.C. 2911.02(A)(2) states that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." In determining criminal liability, a person cannot be found guilty of an offense unless "[t]he person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing" and "[t]he person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense." R.C. 2901.21(A). When a section does not specify any degree of culpability and does not plainly indicate a purpose to impose strict criminal liability for the conduct described, "recklessness is *Page 6 
sufficient culpability to commit the offense." R.C. 2901.21(B). "When recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element." R.C. 2901.22(E).
 {¶ 15} Accordingly, we find that appellant was sufficiently informed in his indictment that the requisite culpable mental state for the offense of robbery, in this case, was knowingly. Appellant's first and second assignments of error are therefore found not well-taken.
 {¶ 16} Appellant argues in his third assignment of error that the trial court erred in denying his motion to suppress the photo array and the in-court identification. Appellant contends that "the photo array was defective in that the reliability of the quality of the photos was such that there was a substantial likelihood of misidentification." Specifically, the printing quality of the photo array was very poor. Each image was bright yellow. As such, individual hair and eye color could not be determined because any features that were not yellow were uniformly black, gray, or brown.
 {¶ 17} Appellant argues that based on the totality of the circumstances surrounding the trial identification and the photo array, appellant was denied his constitutional due process rights. Appellant asserts that the police were unable to ascertain a suspect based upon the victim's description and that, only upon a Crime Stopper tip did the police have a suspect. The police presented the victim with a photo array, but the victim took several minutes before telling the detective who she thought was the suspect, and did not indicate "how certain" she was that the person pictured was the suspect. Appellant also points out *Page 7 
that the victim testified that she did not know the suspect, that the incident occurred really quickly, that she had never been in such a situation before, that she was in fear for her safety, and that she was in a state of shock. Appellant further points out that the victim did not state that the suspect had a tattoo on his neck or hands, both of which appellant possesses.
 {¶ 18} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. Id. Accordingly, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Rhude (1993), 91 Ohio App.3d 623, 626; State v.Guysinger (1993), 86 Ohio App.3d 592, 594.
 {¶ 19} Due process requires suppression of an out-of-court identification, as well as any tainted in-court identification, if the confrontation procedure was "unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." State v. Waddy (1992), 63 Ohio St.3d 424, 438, citingNeil v. Biggers (1972), 409 U.S. 188, and Manson v. Brathwaite (1977),432 U.S. 98. Appellant bears the burden of demonstrating that the challenged identification was unnecessarily suggestive. State v.Freeman, 8th Dist. No. 85137, 2005-Ohio-3480, ¶ 19. If that burden is met, we must then consider "whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification," id., and "whether the identification, *Page 8 
viewed under the totality of the circumstances, is reliable despite the suggestive procedure." State v. Willis (1997), 120 Ohio App.3d 320,324-25; and State v. Torres, 8th Dist. No. 88381, 2007-Ohio-2502, ¶ 80.
 {¶ 20} In examining the totality of the circumstances, a number of factors are to be weighed against "the corrupting effect of the suggestive identification." Manson, supra, 114. These factors include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Id., citing Neil v. Biggers, 409 U.S. at 199-200. Finally, "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States (1968),390 U.S. 377, 384.
 {¶ 21} In this case, a hearing was held on June 1, 2006, regarding appellant's motion to suppress. Detective William Rogers, Toledo Police Department Investigative Service, testified that the victim, Cynthia Thompson, described the assailant who robbed the Subway restaurant as being a white male with slightly blondish hair, cut short, and wearing a knit cap and a jacket. Rogers stated that Thompson was "very adamant" about the assailant's eyes. After receiving a Crime Stopper tip that appellant had robbed the Subway, Rogers prepared a photo array of six individuals, including appellant, which he *Page 9 
showed to Thompson two days after the robbery. Rogers testified that the yellow tint to the photo array was due to the copier having "ink problems." After one to two minutes of examining the array, Thompson picked appellant as the individual who robbed her, noting that "those are the same eyes." On cross-examination, Rogers testified that he had first informed Thompson that he had information of a person that might have committed the offense and that he wanted her to look at a photo array to see if the same person who had committed the robbery was in the array of pictures.
 {¶ 22} Thompson testified that a man entered the store and asked her about the price of a specific sandwich. After telling him, she asked if he wanted the sandwich. He indicated with his hands in his pocket that he perhaps had a gun and told her to open the register. She, however, was unable to open the register without making a sale. Thompson testified that he walked to the door, looked around, came back in, closing the door behind him, and came running toward her. Thompson feared that he was going to jump over the counter and physically hurt her, but instead he grabbed the whole cash register and ran out the door. Thompson had managed to push the panic button during the robbery. She stated that the entire event transpired in about three minutes. She also testified that the restaurant was well lit, that the assailant was about four feet from her, maybe closer, and she described him as being five feet, eight inches tall to six feet tall, having blue eyes, and wearing a navy blue stocking cap, but noted that some of his light brown hair was sticking out, a blue jacket with some red, and a pair of jeans. Thompson *Page 10 
stated that his blue eyes were "burnt" into her head and that he had "anger in his eyes," a "[r]eal evil look in his eyes." She did not notice any scars or markings.
 {¶ 23} Thompson testified that Rogers brought over some photos for her to look at and, when he brought them out, she identified him instantly, "[H]e was there. I mean it was just that's him. And [Rogers] said are you sure that's him? And I said yes, that's him. He is there. He's there." According to Thompson, Rogers told her to take her time and he never indicated that she should select any particular photograph. Thompson stated that she was "certain" of her identification. She also selected appellant, who was seated in the courtroom, as the assailant. On cross-examination, Thompson was asked about the existence of tattoos and she replied that she had not seen any, however, "[t]he jacket he had on, the blue color he had it kind of pulled up so I mean I could — no tattoos. I didn't see any on his hands because when he grabbed the register I tried to grab the black cord to pull it back and he gave it a good — and I just let it go."
 {¶ 24} In denying appellant's motion to suppress, the trial court held that Thompson had an opportunity to observe appellant closely, from less than four feet away, could identify discernible features, and provided an adequate description at the scene. The trial court also noted that Thompson reviewed the photo array two days after the incident, and that there was no indication that there were any suggestions made by Rogers with respect to identifying appellant from the array.
 {¶ 25} Upon review of the record, we agree with the trial court that appellant failed to meet his burden of establishing that the photo array was unnecessarily *Page 11 
suggestive of the suspect's guilt. Thompson testified that Rogers never indicated who in the photo array was suspected. Also, although the array was tinted yellow, we find that this fact did not make the identification unreliable under all the circumstances. The poor print quality permeated the entire array, not just appellant's photograph. Given the monochromatic nature of the array, Thompson was unable to discern eye color, but nevertheless she was able to identify appellant, and his eyes, which stood out so vividly in her mind. Additionally, we note that Thompson had ample opportunity to view the suspect at the time of the robbery and gave a complete description of the assailant at the scene. Although appellant possessed tattoos, which Thompson did not identify, Thompson explained that appellant's jacket collar was pulled up. We further note that it was unlikely Thompson would have seen tattoos on the assailant's hands because, while he was in her presence, his hands were either in his pockets or in the process of grabbing the cash register. Finally, we note that, at the time she identified appellant in the photo array, only two days after the incident, and during the suppression hearing, Thompson was "certain" that appellant was the assailant.
 {¶ 26} Accordingly, we find that the trial court did not err in denying appellant's motion to suppress the photo array or Thompson's identification of appellant. Appellant's third assignment of error is therefore found not well-taken.
 {¶ 27} Appellant argues in his fourth assignment of error that he was denied the right to a fair trial due to prosecutorial misconduct. Specifically, appellant argues that the prosecutor impermissibly commented on appellant's right to remain silent by asking the *Page 12 
potential jurors during voir dire, "Is there anyone here that if you were charged with a crime, you would want to tell your side of the story?"
 {¶ 28} The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14-15. In determining whether an accused's rights were prejudicially affected, an appellate court must consider the nature of the remarks, whether an objection was made by counsel, whether corrective instructions were given by the court, and the strength of the evidence against the defendant. State v. Anderson, 6th Dist. No. L-07-1351, 2008-Ohio-5791, ¶ 29, citing State v. Braxton (1995), 102 Ohio App.3d 28, 41. Courts must also be mindful of the general maxim that prosecutorial misconduct constitutes reversible error only in "rare instances" where the accused is deprived of a fair trial. State v. DePew (1988), 38 Ohio St.3d 275,288. See, also, State v. Phillips (1995), 74 Ohio St.3d 72, 90. A trial court's determination of a motion for a mistrial is reviewed under an abuse of discretion standard. State v. Glover (1988), 35 Ohio St.3d 18, syllabus. "As a result, only a decision to deny a motion for a mistrial that is arbitrary, unreasonable, or unconscionable may be reversed by this court." Anderson, supra, ¶ 29.
 {¶ 29} In this case, during voir dire, the following occurred:
 {¶ 30} MR. BOHNER: "Now, does everyone understand that Clifford Neal does not have to testify in his own defense? Does everyone understand that?
 {¶ 31} "By a show of hands, is there anyone here that if you were charged with a crime, you would want to tell your side of the story?" *Page 13 
 {¶ 32} [DEFENSE COUNSEL]: "Objection, Your Honor. May we approach?"
 {¶ 33} THE COURT: "You may."
 {¶ 34} [DEFENSE COUNSEL]: "Judge, I would object to the statement made by [the state] in regards [sic] to his last statement."
 {¶ 35} THE COURT: "Your objection is sustained."
 {¶ 36} [DEFENSE COUNSEL]: "Okay. I would also move for mistrial at this point that the State has commented on his right to remain silent. He has made an inference as to what these jurors would do if they were in Mr. Neal's position about telling their side of the story. Mr. Neal does not have that obligation to do so. I think that this jury panel has been tainted, and I would move for mistrial at this time."
 {¶ 37} THE COURT: "Mr. Bohner."
 {¶ 38} MR. BOHNER: "Okay. He never let me finish with the voir dire. The purpose was to make sure that if he did not, to ensure a fair trial for the State and the defendant that nobody would hold it against him if he did not. And I was going to explain that."
 {¶ 39} THE COURT: "Well, I sustained the objection because I asked — I'm going to go back. Your motion for mistrial is denied. I've already explained to the jurors that he doesn't have to testify, and I'm going to instruct the jury to disregard the last question even though you didn't ask to strike it. I'm asking them to disregard it. All right. *Page 14 
 {¶ 40} "Ladies and gentlemen, potential jurors, I want you to disregard the last question that was posed by Mr. Bohner. All right. And his last statement. All right. Next question."
 {¶ 41} Upon our review, we find no improper remarks were made by the prosecution. Voir dire is a process used to determine whether potential jurors would be qualified, fair, and impartial. See State v.Crosky, 10th Dist. No. 06AP-655, 2008-Ohio-145, ¶ 116, citing Vega v.Evans (1934), 128 Ohio St. 535, paragraph one of the syllabus (purpose of voir dire is to determine qualification of jurors and whether they are free from bias or prejudice). By reading the prosecutor's comments in context, it is evident that the purpose was to determine whether the jury panel could be fair, and not hold it against appellant, if appellant decided not to testify in his own defense.
 {¶ 42} To the extent that, taken out of context, the state's inquiry could arguably appear to be an improper comment on appellant's right to remain silent, we nevertheless find that appellant was not deprived of a fair trial. The trial court struck the allegedly improper comment and instructed the jury to disregard. Moreover, the trial court instructed the jury that it "must not consider as evidence any statement of any attorney made during the trial," and that "[t]he fact that the defendant did not testify may not be considered for any purpose," as he has "a constitutional right not to testify." Finally, we find that evidence presented was sufficient for the jury to find appellant guilty of robbery, beyond a reasonable doubt. *Page 15 
 {¶ 43} Accordingly, we find that this case does not present one of the "rare instances" wherein the accused was deprived of a fair trial, and find that the trial court's decision to deny appellant's motion for a new trial was not an abuse of discretion. Appellant's fourth assignment of error is therefore found not well-taken.
 {¶ 44} Appellant argues in his fifth assignment of error that he was "denied his constitutional right to a fair trial due to cumulative errors." Specifically, appellant directs this court to the portion of the record where the prosecution engaged in alleged misconduct during voir dire and the victim's identification testimony. However, having found no errors with any proceedings, we find that there is no cumulative effect of prejudicial error that would warrant the trial's reversal. Accordingly, appellant's fifth assignment of error is found not well-taken.
 {¶ 45} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 16 
Peter M. Handwork, J., Mark L. Pietrykowski, J., and Arlene Singer, J., concur.
[1] The indictment in Colon I stated: "in attempting or committing a theft offense, as defined in Section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense upon [the victim, the defendant did] inflict, attempt to inflict, or threaten to inflict physical harm on [the victim]." *Page 1